# WILKO *v.* SWAN et al., doing business as HAYDEN, STONE & CO., et al.

No. 39. Argued October 21, 1953.—Decided December 7, 1953.

*Richard H. Wels* argued the cause for petitioner. With him on the brief was *Henry E. Mills.*

By special leave of Court, *William H. Timbers* argued the cause for the Securities and Exchange Commission,

as *amicus curiae,* urging reversal. With him on the brief were *Acting Solicitor General Stern, Roger S. Foster* and *Alexander Cohen.*

*Horace G. Hitchcock* argued the cause for respondents. With him on the brief were *Ralph D. Ray* and *Francis E. Koch.*

MR. JUSTICE REED delivered the opinion of the Court.

This action by petitioner,* a customer, against respondents, partners in a securities brokerage firm, was brought in the United States District Court for the Southern District of New York, to recover damages under § 12 (2) of the Securities Act of 1933.[1] The complaint alleged that on or about January 17, 1951, through the instrumentalities of interstate commerce, petitioner was induced by Hayden, Stone and Company to purchase

---

*The Securities and Exchange Commission participated as *amicus curiae* throughout this case and has shared petitioner's burden in presenting the case to the Court.

[1] 48 Stat. 74, 15 U. S. C. § 77a *et seq.* § 12 (2), 48 Stat. 84, 15 U. S. C. § 77*l* (2), provides: "Any person who— . . . .

"(2) sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section 77c), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

1,600 shares of the common stock of Air Associates, Incorporated, by false representations that pursuant to a merger contract with the Borg Warner Corporation, Air Associates' stock would be valued at $6.00 per share over the then current market price, and that financial interests were buying up the stock for the speculative profit. It was alleged that he was not told that Haven B. Page (also named as a defendant but not involved in this review [2]), a director of, and counsel for, Air Associates was then selling his own Air Associates' stock, including some or all that petitioner purchased. Two weeks after the purchase, petitioner disposed of the stock at a loss. Claiming that the loss was due to the firm's misrepresentations and omission of information concerning Mr. Page, he sought damages.

Without answering the complaint, the respondent moved to stay the trial of the action pursuant to § 3 of the United States Arbitration Act [3] until an arbitration in accordance with the terms of identical margin agreements was had. An affidavit accompanied the motion stating that the parties' relationship was controlled by the terms of the agreements and that while the firm was willing to arbitrate petitioner had failed to seek or proceed with any arbitration of the controversy.

Finding that the margin agreements provide that arbitration should be the method of settling all future

---

[2] See *Wilko* v. *Swan,* 201 F. 2d 439, 445.

[3] 9 U. S. C. (Supp. V, 1952) § 1 *et seq.* § 3 provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

controversies, the District Court held that the agreement to arbitrate deprived petitioner of the advantageous court remedy afforded by the Securities Act, and denied the stay.[4] A divided Court of Appeals concluded that the Act did not prohibit the agreement to refer future controversies to arbitration, and reversed.[5]

The question is whether an agreement to arbitrate a future controversy is a "condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision" of the Securities Act which § 14[6] declares "void." We granted certiorari, 345 U. S. 969, to review this important and novel federal question affecting both the Securities Act and the United States Arbitration Act. Cf. *Frost & Co.* v. *Coeur D'Alene Mines Corp.*, 312 U. S. 38, 40.

As the margin agreement in the light of the complaint evidenced a transaction in interstate commerce, no issue arises as to the applicability of the provisions of the United States Arbitration Act to this suit, based upon the Securities Act. 9 U. S. C. (Supp. V, 1952) § 2. Cf. *Tejas Development Co.* v. *McGough Bros.*, 165 F. 2d 276, 278, with *Agostini Bros. Bldg. Corp.* v. *United States,* 142 F. 2d 854. See Sturges and Murphy, Some Confusing Matters Relating to Arbitration, 17 Law & Contemp. Prob. 580.

In response to a Presidential message urging that there be added to the ancient rule of *caveat emptor* the further doctrine of "let the seller also beware," [7] Congress passed

---

[4] *Wilko* v. *Swan,* 107 F. Supp. 75.

[5] *Wilko* v. *Swan,* 201 F. 2d 439.

[6] 48 Stat. 84, 15 U. S. C. § 77n. § 14 provides:

"Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void."

[7] H. R. Rep. No. 85, 73d Cong., 1st Sess. 2.

the Securities Act of 1933. Designed to protect investors,[8] the Act requires issuers, underwriters, and dealers to make full and fair disclosure of the character of securities sold in interstate and foreign commerce and to prevent fraud in their sale.[9] To effectuate this policy, § 12 (2) created a special right to recover for misrepresentation which differs substantially from the common-law action in that the seller is made to assume the burden of proving lack of scienter.[10] The Act's special right is enforceable in any court of competent jurisdiction—federal or state—and removal from a state court is prohibited. If suit be brought in a federal court, the purchaser has a wide choice of venue, the privilege of nation-wide service of process and the jurisdictional $3,000 requirement of diversity cases is inapplicable.[11]

The United States Arbitration Act establishes by statute the desirability of arbitration as an alternative to the complications of litigation. The reports of both Houses on that Act stress the need for avoiding the delay and expense of litigation,[12] and practice under its terms raises

---

[8] S. Rep. No. 47, 73d Cong., 1st Sess. 1. See *Oklahoma-Texas Trust* v. *S. E. C.*, 100 F. 2d 888, 891.

[9] 48 Stat. 74, Preamble; 48 Stat. 77, 15 U. S. C. § 77d. See *Frost & Co.* v. *Coeur D'Alene Mines Corp.*, 312 U. S. 38, 40.

[10] See note 1, *supra*. "Unless responsibility is to involve merely paper liability it is necessary to throw the burden of disproving responsibility for reprehensible acts of omission or commission on those who purport to issue statements for the public's reliance. . . . To impose a lesser responsibility would nullify the purposes of this legislation." H. R. Rep. No. 85, 73d Cong., 1st Sess. 9–10.

[11] § 22 (a), 48 Stat. 86, as amended 49 Stat. 1921, 15 U. S. C. § 77v (a). See *Deckert* v. *Independence Shares Corp.*, 311 U. S. 282, 289. Existing remedies at law and equity are retained. § 16, 48 Stat. 84, 15 U. S. C. § 77p.

[12] H. R. Rep. No. 96, 68th Cong., 1st Sess. 1–2; S. Rep. No. 536, 68th Cong., 1st Sess. 3. See *Marine Transit Corp.* v. *Dreyfus*, 284 U. S. 263.

hope for its usefulness both in controversies based on statutes [13] or on standards otherwise created.[14] This hospitable attitude of legislatures and courts toward arbitration, however, does not solve our question as to the validity of petitioner's stipulation by the margin agreements, set out below, to submit to arbitration controversies that might arise from the transactions.[15]

Petitioner argues that § 14, note 6, *supra,* shows that the purpose of Congress was to assure that sellers could not maneuver buyers into a position that might weaken their ability to recover under the Securities Act. He contends that arbitration lacks the certainty of a suit at law under the Act to enforce his rights. He reasons that the arbitration paragraph of the margin agreement is a stipulation that waives "compliance with" the pro-

---

[13] *Agostini Bros. Bldg. Corp.* v. *United States,* 142 F. 2d 854; *Watkins* v. *Hudson Coal Co.,* 151 F. 2d 311; *Donahue* v. *Susquehanna Collieries Co.,* 138 F. 2d 3; *Donahue* v. *Susquehanna Collieries Co.,* 160 F. 2d 661; *Evans* v. *Hudson Coal Co.,* 165 F. 2d 970.

[14] *Marine Transit Corp.* v. *Dreyfus,* 284 U. S. 263; *Kentucky River Mills* v. *Jackson,* 206 F. 2d 111; *Campbell* v. *American Fabrics Co.,* 168 F. 2d 959; *Columbian Fuel Corp.* v. *United Fuel Gas Co.,* 72 F. Supp. 843, affirmed, 165 F. 2d 746; *Matter of Springs Cotton Mills* (Buster Boy Suit Co.), 275 App. Div. 196, 88 N. Y. S. 2d 295, affirmed, 300 N. Y. 586, 89 N. E. 2d 877; *White Star Mining Co.* v. *Hultberg,* 220 Ill. 578, 77 N. E. 327; *Oregon-Washington R. & N. Co.* v. *Spokane, P. & S. R. Co.,* 83 Ore. 528, 163 P. 600; Sturges, Commercial Arbitrations and Awards, pp. 502, 793–798.

[15] "Any controversy arising between us under this contract shall be determined by arbitration pursuant to the Arbitration Law of the State of New York, and under the rules of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or of the American Arbitration Association, or of the Arbitration Committee of the New York Stock Exchange or such other Exchange as may have jurisdiction over the matter in dispute, as I may elect. Any arbitration hereunder shall be before at least three arbitrators."

vision of the Securities Act, set out in the margin, conferring jurisdiction of suits and special powers.[16]

Respondent asserts that arbitration is merely a form of trial to be used in lieu of a trial at law,[17] and therefore no conflict exists between the Securities Act and the United States Arbitration Act either in their language or in the congressional purposes in their enactment. Each may function within its own scope, the former to protect investors and the latter to simplify recovery for actionable violations of law by issuers or dealers in securities.

Respondent is in agreement with the Court of Appeals that the margin agreement arbitration paragraph, note 15, *supra,* does not relieve the seller from either liability or burden of proof, note 1, *supra,* imposed by the Securities Act.[18] We agree that in so far as the award in arbitra-

---

[16] 48 Stat. 86, as amended, 49 Stat. 1921, 15 U. S. C. § 77v (a). § 22 (a) provides:

"The district courts of the United States . . . shall have jurisdiction . . . concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections [1292–93] and [1254] of Title 28. No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States. . . ." See note 11, *supra.*

[17] See *Murray Oil Products Co.* v. *Mitsui & Co.,* 146 F. 2d 381, 383; *American Locomotive Co.* v. *Chemical Research Corp.,* 171 F. 2d 115, 120.

[18] "Paragraph 3 of the margin agreement provides that all transactions 'shall be subject to the provisions of the Securities Exchange Act of 1934 and present and future acts amendatory thereto [15 U. S. C. A. § 78a et seq.].' It contains no express mention of the

tion may be affected by legal requirements, statutes or common law, rather than by considerations of fairness, the provisions of the Securities Act control.[19] This is true even though this proposed agreement has no requirement that the arbitrators follow the law. This agreement of the parties as to the effect of the Securities Act includes also acceptance of the invalidity of the paragraph of the margin agreement that relieves the respondent sellers of liability for all "representation or advice by you or your employees or agents regarding the purchase or sale by me of any property . . . ."

The words of § 14, note 6, *supra,* void any "stipulation" waiving compliance with any "provision" of the Securities Act. This arrangement to arbitrate is a "stipulation,"

---

Securities Act of 1933. If reference to the 1934 Act were construed as excluding the 1933 Act, it might be argued that the agreement did not provide for arbitration of a controversy as to the liability of Hayden, Stone & Co. under section 12 (2) of the 1933 Act. But we do not think the principle of *expressio unius est exclusio alterius* is here applicable. It may well be that the phrase 'present * * * acts * * * supplemental' to the 1934 Act should be construed to include the 1933 Act. In any event the sale transaction would necessarily be subject to that Act. Therefore the *amicus* does not regard it as material whether or not the agreement purports to make that statute applicable. We agree, and shall proceed to a consideration of the question decided below, namely, whether the 1933 Act evidences a public policy which forbids referring the controversy to arbitration." 201 F. 2d, at 443.

The paragraph of the agreement referred to by the Court of Appeals as "3" reads as follows:

"All transactions made by you or your agents for me are to be subject to the constitutions, rules, customs and practices of the exchanges or markets where executed and of their respective clearing houses and shall be subject to the provisions of the Securities Exchange Act of 1934 and present and future acts amendatory thereof or supplemental thereto, and to the rules and regulations of the Federal Securities and Exchange Commission and of the Federal Reserve Board insofar as they may be applicable . . . ."

[19] See Sturges, Commercial Arbitrations and Awards, p. 500.

and we think the right to select the judicial forum is the kind of "provision" that cannot be waived under § 14 of the Securities Act. That conclusion is reached for the reasons set out above in the statement of petitioner's contention on this review. While a buyer and seller of securities, under some circumstances, may deal at arm's length on equal terms, it is clear that the Securities Act was drafted with an eye to the disadvantages under which buyers labor. Issuers of and dealers in securities have better opportunities to investigate and appraise the prospective earnings and business plans affecting securities than buyers. It is therefore reasonable for Congress to put buyers of securities covered by that Act on a different basis from other purchasers.

When the security buyer, prior to any violation of the Securities Act, waives his right to sue in courts, he gives up more than would a participant in other business transactions. The security buyer has a wider choice of courts and venue. He thus surrenders one of the advantages the Act gives him and surrenders it at a time when he is less able to judge the weight of the handicap the Securities Act places upon his adversary.

Even though the provisions of the Securities Act, advantageous to the buyer, apply, their effectiveness in application is lessened in arbitration as compared to judicial proceedings. Determination of the quality of a commodity [20] or the amount of money due under a contract is not the type of issue here involved.[21] This case requires subjective findings on the purpose and knowledge

---

[20] *Campe Corp.* v. *Pacific Mills*, 87 N. Y. S. 2d 16, reversed, 275 App. Div. 634, 92 N. Y. S. 2d 347.

[21] *Evans* v. *Hudson Coal Co.*, 165 F. 2d 970; *Donahue* v. *Susquehanna Collieries Co.*, 160 F. 2d 661; *Watkins* v. *Hudson Coal Co.*, 151 F. 2d 311; *Donahue* v. *Susquehanna Collieries Co.*, 138 F. 2d 3; *Agostini Bros. Bldg. Corp.* v. *United States*, 142 F. 2d 854; *American Almond Prod. Co.* v. *Consolidated Pecan S. Co.*, 144 F. 2d 448.

of an alleged violator of the Act. They must be not only determined but applied by the arbitrators without judicial instruction on the law. As their award may be made without explanation of their reasons and without a complete record of their proceedings, the arbitrators' conception of the legal meaning of such statutory requirements as "burden of proof," "reasonable care" or "material fact," see note 1, *supra,* cannot be examined. Power to vacate an award is limited.[22] While it may be true, as the Court of Appeals thought, that a failure of the arbitrators to decide in accordance with the provisions of the Securities Act would "constitute grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act," [23] that failure would need to be made clearly to appear. In unrestricted submissions, such as the present margin agreements envisage, the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error

[22] 9 U. S. C. (Supp. V, 1952) § 10:

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

[23] *Wilko* v. *Swan,* 201 F. 2d 439, 445.

in interpretation.[24]  The United States Arbitration Act contains no provision for judicial determination of legal issues such as is found in the English law.[25]  As the protective provisions of the Securities Act require the exercise of judicial direction to fairly assure their effectiveness, it seems to us that Congress must have intended § 14, note 6, *supra,* to apply to waiver of judicial trial and review.[26]

This accords with *Boyd* v. *Grand Trunk Western R. Co.,* 338 U. S. 263.[27]  We there held invalid a stipulation restricting an employee's choice of venue in an action under the Federal Employers' Liability Act.  Section 6 of that Act permitted suit in any one of several localities and § 5 forbade a common carrier's exempting itself from any liability under the Act.[28]  Section 5 had been adopted to avoid contracts waiving employers' liability.[29]  It is

---

[24] *Burchell* v. *Marsh,* 17 How. 344, 349; *United States* v. *Farragut,* 22 Wall. 406, 413, 419–421 (note the right of review); *Kleine* v. *Catara,* 14 Fed. Cas. 732, No. 7,869; *Texas & P. R. Co.* v. *St. Louis Southwestern R. Co.,* 158 F. 2d 251, 256; *The Hartbridge,* 62 F. 2d 72, 73.  In *Mutual Benefit Health & Acc. Assn.* v. *United Cas. Co.,* 142 F. 2d 390, 393, the problem was dealt with on the basis of the Massachusetts law.  See Sturges, note 19, *supra;* Note, Judicial Review of Arbitration Awards on the Merits, 63 Harv. L. Rev. 681, 685, Award Based on Erroneous Rule; Cox, The Place of Law in Labor Arbitration, XXXIV Chicago Bar Rec. 205.

[25] Arbitration Act, 1950, 14 Geo. VI, c. 27, § 21, 29 Halsbury's Statutes of England (2d ed.) p. 106.

[26] Cf. notes 66 Harv. L. Rev. 1326; 53 Col. L. Rev. 735; 41 Georgetown L. J. 565; 62 Yale L. J. 985.

[27] See also, *Krenger* v. *Pennsylvania R. Co.,* 174 F. 2d 556; *Akerly* v. *New York Cent. R. Co.,* 168 F. 2d 812.

[28] § 5 of the Federal Employers' Liability Act, 35 Stat. 66, 45 U. S. C. § 55, provides: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void . . . ."

[29] See H. R. Rep. No. 1386, 60th Cong., 1st Sess. 6.  Compare *B. & O. S. R. Co.* v. *Voigt,* 176 U. S. 498.

to be noted that in words it forbade exemption only from "liability." We said the right to select the "forum" even after the creation of a liability is a "substantial right" and that the agreement, restricting that choice, would thwart the express purpose of the statute. We need not and do not go so far in this present case. By the terms of the agreement to arbitrate, petitioner is restricted in his choice of forum prior to the existence of a controversy. While the Securities Act does not require petitioner to sue,[30] a waiver in advance of a controversy stands upon a different footing.[31]

Two policies, not easily reconcilable, are involved in this case. Congress has afforded participants in transactions subject to its legislative power an opportunity generally to secure prompt, economical and adequate solution of controversies through arbitration if the parties are willing to accept less certainty of legally correct adjustment.[32] On the other hand, it has enacted the Securities Act to protect the rights of investors and has forbidden a waiver of any of those rights. Recognizing the advantages that prior agreements for arbitration may provide for the solution of commercial controversies, we decide that the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for arbitration of issues arising under the Act.

*Reversed.*

MR. JUSTICE JACKSON, concurring.

I agree with the Court's opinion insofar as it construes the Securities Act to prohibit waiver of a judicial remedy in favor of arbitration by agreement made before any controversy arose. I think thereafter the parties could agree upon arbitration. However, I find it unnec-

---

[30] Cf. *Callen* v. *Pennsylvania R. Co.*, 332 U. S. 625, 631.

[31] *Brooklyn Savings Bank* v. *O'Neil*, 324 U. S. 697, 707, 714.

[32] Cf. *Wilko* v. *Swan*, 201 F. 2d, at 444.

essary in this case, where there has not been and could not be any arbitration, to decide that the Arbitration Act precludes any judicial remedy for the arbitrators' error of interpretation of a relevant statute.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE MINTON joins, dissenting.

If arbitration inherently precluded full protection of the rights § 12 (2) of the Securities Act affords to a purchaser of securities, or if there were no effective means of ensuring judicial review of the legal basis of the arbitration, then, of course, an agreement to settle the controversy by arbitration would be barred by § 14, the anti-waiver provision, of that Act.

There is nothing in the record before us, nor in the facts of which we can take judicial notice, to indicate that the arbitral system as practiced in the City of New York, and as enforceable under the supervisory authority of the District Court for the Southern District of New York, would not afford the plaintiff the rights to which he is entitled.*

The impelling considerations that led to the enactment of the Federal Arbitration Act are the advantages of providing a speedier, more economical and more effec-

---

*Under the rules of the American Arbitration Association, available to the plaintiff under his contract, the procedure for selection of arbitrators is as follows:

The Association submits a list of potential arbitrators qualified by experience to adjudicate the particular controversy. In the City of New York, the list would be drawn from a panel of 4,400 persons, 1,275 of whom are lawyers. Each party may strike off the names of any unacceptable persons and number the remaining in order of preference. The Association then designates the arbitrators on the basis of the preferences expressed by both parties. See "Questions and Answers," Pamphlet of American Arbitration Association. In short, those who are charged to enforce the rights are selected by the parties themselves from among those qualified to decide.

tive enforcement of rights by way of arbitration than can be had by the tortuous course of litigation, especially in the City of New York. These advantages should not be assumed to be denied in controversies like that before us arising under the Securities Act, in the absence of any showing that settlement by arbitration would jeopardize the rights of the plaintiff.

Arbitrators may not disregard the law. Specifically they are, as Chief Judge Swan pointed out, "bound to decide in accordance with the provisions of section 12 (2)." On this we are all agreed. It is suggested, however, that there is no effective way of assuring obedience by the arbitrators to the governing law. But since their failure to observe this law "would . . . constitute grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act," 201 F. 2d 439, 445, appropriate means for judicial scrutiny must be implied, in the form of some record or opinion, however informal, whereby such compliance will appear, or want of it will upset the award.

We have not before us a case in which the record shows that the plaintiff in opening an account had no choice but to accept the arbitration stipulation, thereby making the stipulation an unconscionable and unenforceable provision in a business transaction. The Securities and Exchange Commission, as *amicus curiae*, does not contend that the stipulation which the Court of Appeals respected, under the appropriate safeguards defined by it, was a coercive practice by financial houses against customers incapable of self-protection. It is one thing to make out a case of overreaching as between parties bargaining not at arm's length. It is quite a different thing to find in the anti-waiver provision of the Securities Act a general limitation on the Federal Arbitration Act.

On the state of the record before us, I would affirm the decision of the Court of Appeals.