

must be certain that the discipline which is imposed is commensurate with the wrong which has been done. Courts are no strangers to contrition and repentance after conviction, nor are they immune from the sympathetic stirring at the sight of one who has fallen so far. And while it is no doubt easier to identify with an attorney of prominence than with one of lesser repute, we must guard against the temptation to find reasons to treat them differently. The simple truth is that no one knows, or can know, what Harry Sears will or will not do should he re-enter the practice of law. Sears could not know himself. If it is true that he would never transgress again, then the three-year suspension was far too much, if discipline is not to be punitive. But if it is correct to say that discipline includes punishment, that is, the effort to make the penalty "fit" the wrongs, then Sears was treated too leniently. His wrongs were very great. For this reason I believe that the record of the State proceedings virtually requires that this Court consider a greater sanction than a three-year suspension from its Bar. Accordingly, I would convene our own proceedings. I dissent.

L. Roland Sturm and Glasgow & Sturm, Columbia, Md., for plaintiff.

Joseph A. Kenary, Thomas F. Hogan, and Kenary, Tietz & Hogan, Rockville, Md., for defendant.

**Bernard V. WASSEL**

v.

**A. G. EDWARDS & SONS, INC.**

Civ. No. T–75–1676.

United States District Court, D. Maryland.

Jan. 10, 1977.

THOMSEN, Senior District Judge.

This case is now before the court on: (1) defendant's motion for an order compelling arbitration of the claims alleged by plaintiff in the. six counts contained in the original declaration filed in the Circuit Court for Montgomery County;[1] and (2) defendant's motion to dismiss counts seven, eight and nine set out in the second amended complaint, filed in this court on March 25, 1976. Because each side has filed an affidavit in support of his or its position on the motion to dismiss, that motion will be treated as a motion for summary judgment, and all in-

---

1. The case was removed to this court pursuant to 28 U.S.C. § 1441; original jurisdiction existed under 28 U.S.C. § 1332.

ferences from the pleadings, affidavits and exhibits must be drawn in favor of plaintiff.

Some time before September 24, 1975, plaintiff opened a "cash account" and a "margin account" with defendant, a stock brokerage firm, and signed a "customer's agreement" in which he agreed, inter alia, that any controversy between the parties "arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned [customer] may elect".

Defendant was a participating underwriter in connection with the public offering of Christensen, Inc. common stock. The effective date of the registration statement for that offering and the first date on which the stock covered thereby could be sold to the public was September 24, 1975. Before that date defendant had received from its customers indications of interest in the proposed offering for an amount of stock exceeding the 12,500 shares which it was obligated to purchase; defendant therefore, as a selling group member and not as an underwriter, acquired from other underwriters 2,700 additional shares for resale to the public.[2]

On or immediately after September 24 defendant mailed to plaintiff a confirmation slip stating that plaintiff had purchased on that date 400 shares of Christensen, Inc. at 15½, a total of $6,600, with a settlement date of October 1. The following statement was typed on the slip: "Prospectus enclosed or mailed under separate cover." After receiving the confirmation and prior to October 3, plaintiff notified the

manager of defendant's Chevy Chase office and its home office that plaintiff "had not authorized this sale".[3] Defendant then sold the 400 shares at a loss of $1,711.05, and charged that amount against a balance in plaintiff's margin account resulting from a sale of Xerox stock concluded on October 6.

Plaintiff thereupon filed an action at law against defendant in the Circuit Court for Montgomery County. His declaration contained six counts, alleging substantially the facts set out above in this opinion, and seeking judgment for $1,711.05, costs and interest, and punitive damages of $100,000 in five of the six counts, based on alleged malicious conversion, fraud, and negligent operation of defendant's business with wanton and reckless disregard of plaintiff's rights.

Defendant removed the case to this court on the ground of diversity of citizenship and promptly filed herein a motion for an order compelling arbitration in accordance with the arbitration clause referred to above.

Plaintiff then filed an amended complaint, adding three counts alleging violations of § 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder, based upon the factual allegations summarized above and the following additional allegations: in count seven, that defendant converted the funds entrusted to it in the margin account in the amount of $1,711.05; in count eight, that defendant purchased a speculative security without giving prior notice to plaintiff in the form of a prospectus; and in count nine, that defendant had made an unauthorized purchase and sale on plaintiff's account. In each count plaintiff alleged that defendant, by doing the things alleged therein and by failing to render proper supervision of its employees, safeguarding against the happening of such events, en-

---

**2.** On September 25, 1975, the managing underwriter of the aforesaid Christensen offering notified the Securities and Exchange Commission that the distribution of shares in the Christensen offering was completed and that all such shares were sold.

**3.** Defendant denies that the sale to plaintiff was "unauthorized" by him, but it must be treated as unauthorized for the purposes of defendant's motion to dismiss.

gaged in "manipulative and deceptive devices", in violation of § 10(b) and Rule 10b–5.

Defendant promptly moved to dismiss counts seven, eight and nine; it recognizes that the claims asserted in those three counts are not arbitrable.[4] Plaintiff recognizes that if judgment is entered for the defendant on those three counts, the claims asserted in the first six counts must be submitted to arbitration.

In *Wassel v. Eglowsky,* 399 F.Supp. 1330 (D.Md.1975), aff'd 542 F.2d 1235 (4 Cir. 1976), a case brought by the plaintiff herein, Judge Kaufman said:

"Essentially, the elements of a 10b–5 cause of action are (1) a material and false representation or omission by defendant, (2) some form of scienter or scienter-like conduct by defendant, (3) an intention that the misrepresentation be acted upon, (4) some degree of reliance by plaintiff, and (5) actual resulting damage to plaintiff." 399 F.Supp. at 1363.

In *Carras v. Burns,* 516 F.2d 251 (4 Cir. 1975), the Court, speaking through Judge Butzner, said, at p. 257:

" * * * When a broker misrepresents a material fact, or in the circumstances shown by the plaintiffs' evidence in this case, fails to disclose information that a reasonable investor would consider significant, it may be inferred that the customer would have relied on the broker's statement or, in the case of non-disclosure, that he would have relied on the information had he known it. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). *Affiliated Ute* also teaches that causation can be established by proof of the misrepresentation or non-disclosure. 406 U.S. at 154, 92 S.Ct. 1456. The broker, however, may rebut these inferences by proving lack of reliance and, consequently, a lack of causation. *Rochez Brothers v. Rhoades,* 491 F.2d 402, 410 (3rd Cir. 1974)."

In the case at bar, no misrepresentation has been alleged except the sending of the confirmation slip, and plaintiff did not rely on that in any way. Nor has any concealment been alleged, except the failure to deliver a prospectus before the sale was made. Since plaintiff denies there was a sale, the failure to deliver a prospectus before the sale is immaterial, even if (which this court does not hold) it were a violation of the Securities Acts for a broker to accept an order for a new issue over the phone and send the prospectus by mail promptly thereafter. Plaintiff did not rely on any misrepresentation or withholding of information. His allegations may support a claim of conversion or other tort, or a claim of breach of contract, but they do not support a claim of a violation of § 10(b) and Rule 10b–5. Finally, the allegations in each of counts seven, eight and nine that defendant failed to render proper supervision of its employees, safeguarding against the happening of the other wrongs alleged in those counts, does not suffice to bring those counts within that section and rule. See *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

Summary judgment will be entered in favor of defendant on counts seven, eight and nine.

An order will be entered requiring plaintiff to submit to arbitration his claims under counts one through six. Further proceedings herein will be stayed pending the outcome of the arbitration. Counsel should agree upon such an order or arrange for a prompt hearing on its terms.

---

4. See *Kavit v. A. L. Stamm & Co.,* 491 F.2d 1176, 1179, n. 2 (2 Cir. 1974); cf. *Wilko v.* *Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).