**Mohammad M.S.Z. HASHEMI and Sedigheh M.S.Z. Hashemi, Plaintiffs,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.**

**Civ. A. No. C82–2948A.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 6, 1985.

Mohammad M.S.Z. Hashemi, pro se.

Paul W. Stivers, Janice E. Garlitz, Rogers & Hardin, Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This action is before the court on defendant's motion to compel arbitration; plaintiff's motion to set a date for trial; defendant's motion for leave to file a motion for reconsideration; and on defendant's motion for reconsideration. Because the court has decided to grant defendant's motion to compel arbitration and to stay this action, the latter three motions are moot and are DENIED on that basis.

Plaintiffs originally filed this action on December 29, 1982. Plaintiffs' complaint asserts that defendant is liable under section 10(b) of the 1934 Securities Exchange Act and Rule 10b–5 for the manner in which it handled plaintiffs' securities account. The customer agreement which plaintiffs signed contained an arbitration clause which provides as follows:

11. *Agreement to Arbitrate Controversies.* It is agreed that any controversy between us arising out of your business or this agreement, shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect. . . . Arbitration must be commenced by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, therein electing the arbitration tribunal. In the event the undersigned does not make such designation within five (5) days of such demand or notice, then the undersigned authorizes you to do so on behalf of the undersigned.

Plaintiffs also signed a Standard Option Agreement which contains an arbitration clause providing as follows:

Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration only before the National Association of Securities Dealers, Inc., or the New York Stock Exchange, or an Exchange located in the United States upon which listed options transactions are executed. I shall have the right of election as to which of the foregoing tribunals shall conduct the arbitration. Such election is to be by registered mail, addressed to Merrill Lynch's head office at 165 Broadway, New York, N.Y. 10080, attention of the Law Department. The notice of election is to be postmarked five days after the date of your demand to make such election. At the expiration of the five days, I hereby authorize Merrill Lynch to make such election on my behalf.

Pursuant to these arbitration agreements defendant moved on or about February 4, 1983 for an order compelling arbitration and staying the proceedings. However, because plaintiffs subsequently amended their complaint to eliminate any state law claims, and because it was commonly accepted at that time that claims arising under the Securities Exchange Act of 1934

were not subject to arbitration, defendant's motion was denied as moot on June 24, 1983. The court has since denied defendant's motion for summary judgment.

▮ Defendant has now again moved for an order compelling arbitration and staying these proceedings on the grounds that the Supreme Court's recent decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) calls into question the validity of the cases upon which the court relied when it concluded that claims under the Securities Exchange Act of 1934 were not subject to arbitration. The Federal Arbitration Act provides that a written agreement to arbitrate controversies arising out of a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985); 9 U.S.C. §§ 3, 4. Despite the clear language of the Arbitration Act, however, it has long been assumed that claims arising under the Securities Exchange Act of 1934 were not subject to arbitration. This understanding has been based upon the Supreme Court's decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In that case the Supreme Court held that an agreement to arbitrate claims arising under the Securities Act of 1933 was not enforceable. The Court's reasoning was based upon section 14 of that Act which provided that "any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." 15 U.S.C. § 77n. Plaintiff in *Wilko* sought to recover damages under section 12(2), which provides an express damages remedy. The Court concluded that

> The words of § 14 … void any "stipulation" waiving compliance with any "pro-vision" of the Securities Act. This arrangement to arbitrate is a "stipulation," and we think the right to select the judicial forum is the kind of "provision" that cannot be waived under § 14 of the Securities Act.

346 U.S. at 434–35, 74 S.Ct. at 186–87.

Despite the fact that *Wilko v. Swan* dealt with the express cause of action created by the Securities Act of 1933 and with a provision of that Act which, in its view, explicitly prohibited clauses requiring arbitration of that express cause of action, the federal appellate courts have extended the doctrine to the implied cause of action under section 10(b) of the Securities Exchange Act of 1934, even though that Act has no equivalent to section 14 of the 1933 Act. *See, e.g., Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 693 F.2d 1023 (11th Cir.1982); *Sibley v. Tandy Corp.*, 543 F.2d 540, 543 n. 3 (5th Cir.1976). Indeed, it has generally been assumed to have been a settled proposition that claims arising under the Securities Exchange Act of 1934 were controlled by *Wilko v. Swan* and were not subject to arbitration. However, the Supreme Court has never so held. In its recent case of *Dean Witter Reynolds, Inc. v. Byrd* the court in a footnote alluded to this issue:

> In *Wilko vs. Swan*, 346 U.S. 427 [, 74 S.Ct. 182, 98 L.Ed. 168] (1953), this Court held that a pre-dispute agreement to arbitrate claims that arise under § 12(2) of the Securities Act of 1933, 15 USC § 77l(2), was not enforceable. The Court pointed to language in § 14 of the Securities Act of 1933, 15 USC § 77n, which declares "void" any "stipulation" waiving compliance with any "provision" of the Securities Act, and held that an agreement to arbitrate amounted to a stipulation waiving the right to seek a judicial remedy, and was therefore void. 346 U.S., at 434–35 [, 74 S.Ct. at 186–87]. Years later, in *Scherk vs. Alberto-Culver Co.*, 417 U.S. 506 [, 94 S.Ct. 2449, 41 L.Ed.2d 270] (1974), this Court questioned the applicability of *Wilko* to a claim arising under section 10(b) of the Securities Exchange Act of 1934, or un-

der Rule 10b–5, because the provisions of the 1933 and 1934 Acts differ, and because, unlike § 12(2) of the 1933 Act, § 10(b) of the 1934 Act does not expressly give rise to a private cause of action. 417 U.S. at 512–13 [, 94 S.Ct. at 2453–54]. The Court did not, however, hold that *Wilko* would not apply in the context of a § 10(b) or Rule 10b–5 claim, and *Wilko* has retained considerable vitality in the lower federal courts. Indeed, numerous District Courts and Courts of Appeals have held that the *Wilko* analysis applies to claims arising under § 10(b) of the Securities Exchange Act of 1934, 15 USC § 78j(b), and that agreements to arbitrate such claims are therefore unenforceable....

Dean Witter and amicae representing the securities industry urge us to resolve the applicability of *Wilko* to claims under section 10(b) and Rule 10b–5. We decline to do so. In the district court, Dean Witter did not seek to compel arbitration of the federal securities claims. Thus, the question whether *Wilko* applies to § 10(b) and Rule 10b–5 claims is not properly before us.

470 U.S. at 215, 105 S.Ct. at 1240 n. 1. In a concurring opinion Justice White stated:

The premise of the controversy before us is that respondent's claims under the Securities Exchange Act of 1934 are not arbitrable, notwithstanding the contrary agreement of the parties. The Court's opinion rightly concludes that the question whether that is so is not before us. ... Nonetheless, I note that this is a matter of substantial doubt. In *Wilko vs. Swan*, 346 U.S. 427 [, 74 S.Ct. 182, 98 L.Ed. 168] (1953) the Court held arbitration agreements unenforceable with regard to claims under § 12(2) [of] the 1933 Act. It relied on three interconnected statutory provisions: § 14 of the Act, ...; § 12(2), which, the Court noted, creates "a special right to recover for misrepresentation which differs substantially from the common-law action;" and § 22, which allows suit in any state or federal court of competent jurisdiction

and applies for nationwide service of process....

*Wilko*'s reasoning cannot be mechanically transplanted to the 1934 Act. While § 29 of that Act, 15 USC § 78cc(a), is equivalent to § 14 of the 1933 Act, counterparts of the other two provisions are imperfect or absent altogether. Jurisdiction under the 1934 Act is narrower, being restricted to the federal courts. 15 USC § 78aa. More important, the cause of action under § 10(b) and Rule 10b–5, involved here, is implied rather than express. ... The phrase "waive compliance with any *provision of this chapter*," 15 USC § 78cc(a) (emphasis added), is thus literally inapplicable. Moreover, *Wilko*'s solicitude for the federal cause of action—the "special right" established by Congress, 346 U.S., at 431 [, 74 S.Ct. at 184] ...—is not necessarily appropriate where the cause of action is judicially implied and not so different from the common law action.

The Court has expressed these reservations before. *Scherk vs. Alberto-Culver Co.*, 417 U.S. 506, 513–14 [, 94 S.Ct. 2449, 2454–55, 41 L.Ed.2d 270] (1974). *I reiterate them to emphasize that the question remains open and the contrary holdings of the lower courts must be viewed with some doubt.*

105 S.Ct. at 1244 (emphasis added). In light of the Supreme Court's aggressive interpretation of the Arbitration Act in recent years, *see Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Co.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and in light of the court's decision in *Byrd*,[1] this court concludes that the Supreme Court would hold that claims arising under the Securities Act of 1934 are not within the doctrine of *Wilko v. Swan* and are therefore subject to arbitration.

The arbitration clauses in this case require arbitration of "any controversy between [plaintiffs and Merrill Lynch] arising out of your [Merrill Lynch's] business or

---

**1.** In *Byrd* the Supreme Court explicitly rejected the "intertwining doctrine" applied by the Fifth

and Eleventh Circuits. The Court held that the district court had no discretion to deny a mo-

this agreement." The options agreement requires arbitration of "any controversy between us arising out of such option transactions." Plaintiffs' claims clearly arise out of defendant's handling of plaintiffs' account and are therefore within the scope of the arbitration agreement. Therefore, 9 U.S.C. § 4 requires that the motion to compel arbitration be granted unless the arbitration agreement was procured by fraud.

■ Plaintiffs have, in fact, alleged that the customer agreement and the options agreement were obtained by fraud. However, plaintiffs have not alleged that the arbitration clauses themselves were inserted into the contracts fraudulently. The Supreme Court has specifically held that where the claim of fraud is in the inducement of the contract as a whole and not merely in the arbitration clause itself, the question of fraud is to be resolved by the arbitrator, not by the court:

> If the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of the Federal Arbitration Act] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The arbitration clauses involved in this case appear in ordinary size type and are clearly designated as agreements to arbitrate. There can be no issue that they were fraudulently inserted into the customer agreement or the standard options agreement. Thus, the only issue is whether or not the contracts as a whole were obtained by fraud. This is a matter for the arbitrator to decide.

In sum, the court holds that plaintiffs' claims arising under § 10(b) of the Securities Act of 1934 and Rule 10b–5 of the

Securities Exchange Commission are not within the doctrine of *Wilko v. Swan* and are subject to arbitration. The court further holds that plaintiffs' claims are within the scope of the arbitration clauses involved in this case. Therefore, since plaintiffs have not raised any colorable issue that the arbitration clauses themselves were obtained by fraud, defendant's motion to compel arbitration pursuant to 9 U.S.C. § 4 is GRANTED. Pursuant to 9 U.S.C. § 4, the parties are hereby DIRECTED to proceed to arbitration in accordance with the terms of the agreement. The arbitration proceedings shall be held in this district. Pursuant to 9 U.S.C. § 3, the court hereby STAYS this proceeding pending the outcome of arbitration. The remaining motions are therefore MOOT. The Clerk of Court is DIRECTED to close this case for statistical purposes.

tion to compel arbitration of an arbitrable controversy. Since the petitioner had demanded arbitration of the state law claims, and since those claims were covered by the arbitration clause in the customer agreement, the Supreme Court held that the district court had no discre-

tion to deny the motion or even to stay the state law claims until resolution of the federal claims. The Court reached this decision even acknowledging that the result would be the possibly inefficient maintenance of separate proceedings in different forums.