**Darrell BRAND, and all others similarly situated, Plaintiff,**

v.

**PIPER JAFFRAY & HOPWOOD, INC.; The Piper Capital Group, Inc.; Piper Realty Management, Inc.; and F. Patrick Brown, Defendants.**

**No. 3–90 CIV 655.**

United States District Court,
D. Minnesota,
Third Division.

Feb. 20, 1991.

Zimmerman & Reed by John McKee, Minneapolis, Minn., for plaintiff.

Leonard, Street & Deinard by George F. McGunnigle, Jr. and William L. Greene, Minneapolis, Minn., for defendants.

### ORDER

ALSOP, Chief Judge.

The above-entitled matter came before the court on February 14, 1991, on the motion of the defendants Piper Jaffray & Hopwood, Inc. ("Piper Jaffray"), Piper Realty Management, Inc. ("Piper Realty"), and F. Patrick Brown pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–15, to compel arbitration of all claims, and to stay the instant litigation pending arbitration.

## I. FACTUAL BACKGROUND

### A. *Plaintiff's Allegations*

Plaintiff was a limited partner of Hunter's Run Limited Partnership ("the partnership"), which was formed in 1985 to acquire a 200–unit apartment complex in Orlando, Florida. Piper Jaffray was the selling agent for the partnership. Piper Realty [1] and F. Patrick Brown were general partners. The partnership was dissolved on or about March 9, 1990.

Plaintiff alleges that Piper Jaffray, Piper Realty, and F. Patrick Brown fraudulently induced him to purchase his interest in the partnership. Plaintiff's first claim alleges that defendants violated the Securities Exchange Act of 1934, 15 U.S.C. § 78a and 78t(b), and the Securities and Exchange Commission Rule 10b–5 promulgated thereunder. The second claim alleges common law negligent misrepresentation. Plaintiff purports to bring this action as a class action on behalf of a class consisting of all limited partners who purchased interest in the partnership.

### B. *The Subscription Agreement*

In 1985, when the partnership was formed, plaintiff executed a Subscription Offer and Power of Attorney with the partnership as a condition of his acceptance into the partnership. The agreement thereby created set forth the terms and conditions of plaintiff's limited partnership interest.

The Certificate and Articles of Limited Partnership, which plaintiff agreed to be bound by, as part of the Subscription Agreement, contains the following arbitration provision:

> Any dispute, controversy or claim arising out of or in connection with, or relating to, this Agreement, or any breach or alleged breach hereof, except allegations of violations of Federal or state securities laws, shall, with the consent of the General Partners, be submitted to and settled by arbitration in the City of Kansas City, State of Missouri, pursuant to the rules then in effect of the American Arbitration Association (or at any other place or under any other form of arbitration mutually acceptable to the parties so involved)....

## II. ANALYSIS

In the instant case, defendants ask this court to compel arbitration of both the Securities Exchange Act of 1934 and the common law negligent misrepresentation claims contained in plaintiff's complaint. As to the common law claim, the plaintiff agrees that it is subject to arbitration and the court will therefore order it be sent to arbitration. Brand contends, however, that his claim under the Securities Exchange Act of 1934 is not subject to arbitration.

The contract in the case at hand explicitly excepts Federal Securities Act claims from arbitration. Nonetheless, defendants maintain that the arbitration agreement executed by the plaintiff requires arbitration of the federal securities claims. They ar-

---

**1.** Piper Realty was known as Piper Capital Group, Inc. ("Piper Capital") at the time the partnership was formed.

gue that the exception clause contained in the contract must be construed in the context of the law that governs the arbitrability of securities claims in 1985, when the parties executed the Subscription Agreement. At that time, pursuant to the case of *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Securities and Exchange Commission had adopted Rule 15c2–2, which made it a fraudulent practice for a broker "to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the federal securities laws...." Defendants thus argue that they inserted the exception clause into the arbitration agreement in the present case in response to the requirements of Rule 15c2–2. Therefore, they argue that this court should not construe this exception as a substantive contractual term. *See, Clark v. Merrill Lynch,* 924 F.2d 550 (4th Cir.1991); *Tauber v. Prudential–Bache Securities,* [1990 transfer binder] Fed.Sec.L.Rep. (CCH) ¶ 95, 226, p. 95, 983, 1990 WL 78530 (D.Md. April 4, 1990).

Relying on *Ballay v. Legg Mason,* 878 F.2d 729 (3rd Cir.1989) and *Gooding v. Shearson Lehman,* 878 F.2d 281 (9th Cir. 1989), plaintiff argues that an express exclusion from arbitration, as contained in the present case, is an express grant of the right to litigate those claims. In *Gooding,* the court was confronted with an arbitration clause similar to the one at bar. The court ruled that arbitration was not required and in doing so noted that:

> There is no evidence in the record in this matter that the parties did not intend to be bound by the exclusionary provision in the arbitration clause. Both parties must abide by the terms of the contract. Under the contract, Shearson agreed that Gooding had the option of seeking a judicial determination of his federal securities law claims instead of submitting them to arbitration.

878 F.2d at 284.

The Third Circuit Court of Appeals in *Legg Mason* also refused to compel arbitration on facts similar to the ones in the case at hand. In *Legg Mason,* as in the present case, the defendant urged the court to look beyond the plain language of the contract and consider the regulatory background surrounding the inclusion of the qualifying language in the arbitration agreement. *Id.* at 734. The court in *Legg Mason* rejected this argument. In doing so, the court emphasized the importance of the plaintiff's reasonable expectations when entering into the contract:

> even if we were to look at the regulatory background, we see no reason in it for rejecting customers' reasonable expectations. A customer reading the exclusionary language could not be expected to be aware of the regulatory background or to understand that the language may become meaningless with the winds of change in the law.

*Id.*

The arbitration agreement before the court, as the agreements in *Legg Mason* and *Gooding,* clearly exclude securities claims from arbitration. In addition, as in *Gooding,* there is no indication that the parties did not intend to be bound by the exclusionary provision in the arbitration clause. Faced with such explicit language, and in light of the reasoning of the *Legg Mason* and *Gooding* cases, this court will deny defendants' motion to compel arbitration with regard to the federal securities claims.

Accordingly, upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED That:

1. Defendants' motion to compel arbitration of the common law misrepresentation claim is GRANTED and all proceedings in this court relating to that claim are STAYED; and

2. Defendants' motion to compel arbitration of the federal securities law claim is DENIED.