In the Matter of the ARBITRATION BETWEEN ASAMERA (SOUTH SUMATRA) LTD., Petitioner,

and

TESORO PETROLEUM CORPORATION, Respondent.

No. 91 Civ. 6235 (LAP).

United States District Court, S.D. New York.

Dec. 9, 1992.

See also 798 F.Supp. 400.

---

Breed, Abbott & Morgan by C. MacNeil Mitchell, Susan R. Sheppard, New York City, for petitioner.

Varet Marcus & Fink P.C. by Leo G. Kailas, Stanley McDermott, III, New York City, for respondent.

## OPINION

PRESKA, District Judge.

Petitioner, Asamera (South Sumatra) Ltd. ("Asamera"), seeks an order, pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (1988 & Supp. II 1990 & Supp. III 1991), confirming an arbitration award dated September 6, 1991 against Tesoro Petroleum Corporation ("Tesoro") for the payment of royalties under an oil-and-gas farmout agreement. Asamera also requests sanctions against Tesoro under Fed. R.Civ.P. 11. For the reasons set forth below, the arbitration award is confirmed, and Asamera's request for sanctions is denied.

### I. Background

On October 15, 1968, Pertamina, an Indonesian state-owned corporation, and Asamera's predecessor, Redco,[1] entered into a Technical Assistance Contract (the "1968 TAC") which provided for the production of oil and gas by Asamera in Indonesia. The

1968 TAC limited its term to twenty years (§ II) but stated that Pertamina would give "sympathetic consideration" to a request made by Asamera for an extension of the contract (§ XII.5). Indonesian law applies to the 1968 TAC (§ XII.2).

In 1971, Asamera and Tesoro entered into a Farmout Agreement (the "1971 FOA") which assigned Asamera's "entire interests" in the 1968 TAC relating to two designated areas of Indonesia (the "Farmout Areas") to Tesoro (¶ 1) in exchange for a gross overriding royalty of two percent of the value of all oil and gas derived from the Farmout Areas (¶ 6). The 1971 FOA provided for the arbitration of any dispute (¶ 12) and for Texas law to govern the agreement (¶ 13).

On March 13, 1989, Tesoro and Pertamina entered into an agreement, effective October 15, 1988, which provided for the production of oil and gas in the Farmout Areas by Tesoro (the "1988 TAC"). As of October 15, 1988, Tesoro refused to pay Asamera the two-percent royalty called for by the 1971 FOA on the basis that Tesoro's oil and gas production in the Farmout Areas was no longer pursuant to the 1968 TAC, which had expired, but pursuant to the 1988 TAC.

Asamera disputed whether Tesoro's obligation to pay the two-percent royalty ceased as of October 15, 1988, and the parties submitted the dispute to arbitration pursuant to ¶ 12 of the 1971 FOA. After five days of evidentiary hearings and the submission of briefs, a panel of three arbitrators, operating under the auspices of the American Arbitration Association, unanimously awarded Asamera royalties under the 1971 FOA for Tesoro's oil and gas production in the Farmout Areas following the expiration of the 1968 TAC on October 15, 1988.

### II. The Arbitration Award

Although not required to do so, the arbitrators prepared a fifteen-page summary of their reasons for the award (the "Reasons") in response to a request made by Asamera. The arbitrators qualified this document by underscoring that it did not

---

**1.** Redco and Asamera will each be referred to as "Asamera."

represent a comprehensive opinion but merely set out the "essential elements" leading to the award. Reasons at 2–3.

Finding that the 1971 FOA was silent as to the duration of its royalty provision, the arbitrators construed the 1971 FOA within its "four corners" pursuant to Texas law. Reasons at 4–5. This analysis resulted in the arbitrators' determination that the royalty provision of the 1971 FOA was "not subject to any limitation as to time." Reasons at 7–8. Thus, the arbitrators found that the 1971 FOA demanded that Tesoro pay royalties to Asamera beyond October 15, 1988 even though Tesoro's operations in the Farmout Areas occurred under the auspices of the 1988 TAC as of that time.[2]

The arbitrators acknowledged in their summary an argument put forth by Tesoro based upon the "no greater estate" principle of Texas law. Reasons at 5. This principle, Tesoro has insistently urged, would limit Asamera's overriding royalty under the 1971 FOA to the term of the 1968 TAC. The arbitrators found that the "no greater estate" principle related primarily to Texas mineral leases, a situation not "precisely analogous" to that before them, and therefore the principle did not restrict the term of the royalty obligation or otherwise influence the arbitrators' construction of the 1971 FOA. Reasons at 6.

Furthermore, the arbitrators concluded that even if the "no greater estate" principle applied to the dispute, the 1968 TAC included the "opportunity" for a renewal or extension of its term (as a result of the "sympathetic consideration" language contained in § XII.5), and this "opportunity" was conveyed to Tesoro under the 1971 FOA. Reasons at 6–7. In fact, the arbitrators found the 1988 TAC to be a renewal or extension of the 1968 TAC for purposes of the 1971 FOA. Reasons at 12. Thus, the arbitrators determined that the application of the "no greater estate" principle advanced by Tesoro would not restrict the duration of the 1971 FOA royalty obligation to October 15, 1988 when the 1968 TAC terminated.

### III. *The Standard of Review*

Asamera filed its notice of petition to confirm the arbitration award in this Court on September 20, 1991. Tesoro has opposed the petition arguing that the award should be vacated because it falls within the doctrine of "manifest disregard of the law." The doctrine of "manifest disregard" provides a recognized ground for vacatur of an arbitration award.

> Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.... The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933–34 (2d Cir.1986) (citations omitted). This formulation of the doctrine conveys its underlying elements: the arbitrators must (1) "appreciate the existence of a clearly governing legal principle" yet (2) "ignore or pay no attention to it." *Id.*

This strict standard of judicial scrutiny exists in recognition of "our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties." *Id.* at 933. Indeed, in concurring, Judge Meskill argued that if the arbitrators "engaged in a considered and detailed analysis" of the disputed legal principle, one can then conclude, without any further inquiry, that the second prong of the doctrine cannot be met and the arbitration award should be confirmed. *Id.* at 937–38 (Meskill, J., concurring). As dis-

---

**2.** Although the logic of the award appears to require that Tesoro pay royalties to Asamera as long as Tesoro operates in the Farmout Areas, the arbitrators made clear that they did not "exclude the possibility" that changed circumstances might permit Tesoro to operate in the Farmout Areas without paying the royalty to Asamera. Reasons at 8, 14–15.

cussed below, the instant case does not fit within the narrow limits of the "manifest disregard" doctrine, and the arbitration award is accordingly confirmed.

## IV. *Discussion*

Tesoro has asserted three arguments in its attempt to establish "manifest disregard;" each of these arguments revolves around the application of the "no greater estate" principle of Texas law to the underlying dispute between the parties. In short, Tesoro maintains that the "no greater estate" principle demands that a reserved overriding royalty not endure longer than the underlying mineral interest from which it is carved; applied to this case, the royalty provision of the 1971 FOA cannot extend beyond the term of the 1968 TAC.

### A. The Acknowledged "Force" of the Principle.

■ In recognition of its burden under the standard of "manifest disregard," Tesoro argues that the arbitrators in fact recognized the applicability of the "no greater estate" principle but nevertheless decided to ignore the principle in determining the duration of the overriding royalty. In support of this proposition, Tesoro cites the arbitrators' statement that "[w]e do not doubt the force of [Tesoro's] evidence [regarding the "no greater estate" principle] so far as it relates to Texas mineral leases." Reasons at 6.

Rather than apply the "no greater estate" principle, however, the arbitrators distinguished it from this dispute. As noted above, the arbitrators considered the "no greater estate" principle to relate primarily to Texas mineral leases and found that "the authorities on Texas mineral leases, which deal with property rights, are not precisely analogous to the situation we have to consider." Reasons at 6.

In fact, the parties had presented arguments to the arbitrators regarding the applicability of the "no greater estate" principle to oil-and-gas farmout agreements. Apparent from their decision, the arbitrators found the "no greater estate" principle

inapplicable because they considered the 1971 FOA to convey contract rights and not property rights. Reasons at 6. Tesoro claimed unsuccessfully before the arbitrators that this distinction did not affect the bearing of the "no greater estate" principle upon the 1971 FOA. Accordingly, the language cited by Tesoro to demonstrate the arbitrators' acknowledgement of the "no greater estate" principle actually reveals the arbitrators' determination finding the principle inapplicable.

### B. The Purported Exclusion of the Only Applicable Law.

■ Tesoro further asserts that the arbitrators effectively ignored the only law which could possibly govern the dispute when they construed the 1971 FOA under principles of Texas contract law rather than the "no greater estate" principle. Tesoro contends that the arbitrators, by looking only to the four corners of the contract instead of the "no greater estate" principle, set aside any consideration of the only Texas law addressing the subject at hand—the duration of an overriding royalty in an oil-and-gas farmout agreement.

Tesoro's argument fails because the 1971 FOA did not require that the arbitrators apply the "no greater estate" principle, or any other portion of Texas law, to the agreement. Rather, the 1971 FOA stated that Texas law governed the agreement (¶ 13) leaving the application of that law to the arbitrators. Furthermore, Tesoro itself recognizes that "Texas 'contract law' is seamlessly intertwined with Texas oil-and-gas law." Mem. of Tesoro in Opp'n to Pet. to Confirm Arbitration Award, at 16. Thus, although Tesoro has disputed the arbitrators' application of Texas law, it has failed to demonstrate "manifest disregard"—the arbitrators' disavowal of a principle of law found clearly to govern.

Moreover, the arbitrators stated that they would have found in favor of Asamera even if they had applied the "no greater estate" principle to the dispute. Reasons at 6–7. Although Tesoro also contests this finding of the arbitrators,[3] in so doing,

---

**3.** Tesoro contends that the arbitrators incorrectly found that the "opportunity" for renewal or

extension contained in the 1968 FOA was conveyed in the 1971 FOA. Tesoro argues that (1)

Tesoro merely asserts an error in the arbitrators' application of the law—also insufficient to rise to the level of "manifest disregard." *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953).

### C. The Claim of a Pretextual Finding by the Arbitrators.

■ Lastly, Tesoro argues that the arbitrators' outward reliance upon Texas contract law in making the award and the arbitrators' related differentiation of the "no greater estate" principle were a mere pretext used by the arbitrators in order to decide the dispute according to their own notions of "industrial justice." [4] The only basis for Tesoro's contention appears to be its conviction that the arbitrators decided the dispute wrongly in not adopting Tesoro's arguments.

If the Court were to adopt Tesoro's argument that an arbitration award can be overturned on the mere assertion that the arbitrators' stated basis for the award is a pretext, the efficacy of arbitration as a means of alternative dispute resolution would be called into question. A party seeking vacatur of an arbitration award would be equipped with an unfettered means of challenging any award on the assertion that it was pretextual. For this reason, it has been long recognized that "[w]hen arbitrators explain their conclusions ... in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result." *Andros Compania Maritima v. Marc Rich & Co., A.G.,* 579 F.2d 691, 704 (2d Cir.1978).

Although unnecessary in order for the Court to reject Tesoro's argument, it is noteworthy that the arbitrators' basis for differentiating the "no greater estate" principle—an argument which Tesoro contends the arbitrators adopted as a "pretext" for the award—in fact had some support in the testimony presented to the arbitrators by Tesoro's own expert. Professor Lowe conceded that differences exist between the 1968 TAC and a typical oil-and-gas lease and that the 1968 TAC related to contract rights as opposed to property rights. Tr. at 978, 1033–34. Because this testimony—given by Tesoro's witness—shows that there is not just one body of law which could possibly govern the dispute, it undermines Tesoro's present contention that the award lacked any possible foundation.

### V. *Conclusion*

Tesoro has failed to demonstrate that the arbitrators appreciated the existence of clearly applicable law yet failed to implement it. In fact, the arbitrators' summary of reasons for their decision reveals that the arbitrators gave weighty consideration to the principle of law advocated by Tesoro but nevertheless rejected it. Accordingly, Asamera's petition to confirm the arbitration award is granted; its request for sanctions against Tesoro is denied.[5]

SO ORDERED.

---

only "rights," not "opportunities," were transferred in the 1971 FOA and (2) a renewal or extension clause in the 1971 FOA is a prerequisite to having Tesoro pay royalties to Asamera beyond October 15, 1988.

**4.** *Cf. United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358,

1361, 4 L.Ed.2d 1424 (1960) (an arbitrator "does not sit to dispense his own brand of industrial justice.").

**5.** Although the arguments presented by Tesoro fail, they are thought-provoking and certainly do not merit sanctions.