Tim **JARVIS**

v.

**DEAN WITTER REYNOLDS, INC.,
Edward Sullivan and Peter R.
Woodworth.**

Civ. A. No. 83–383.

United States District Court,
D. Vermont.

Aug. 6, 1985.

Robert B. Hemley, Gravel & Shea, Burlington, Vt., for plaintiff.

Gary Barnes, Downs, Rachlin & Martin, South Burlington, Vt., for defendants.

COFFRIN, Chief Judge.

Plaintiff Tim Jarvis brought this action against Defendants Dean Witter Reynolds, Inc. ("Dean Witter"), Edward Sullivan and Peter R. Woodworth, alleging violations of the Securities Exchange Act of 1934 (the "1934 Act"), and the following state law claims: fraud, breach of contract, negligence and breach of fiduciary duty. Defendants move to compel arbitration of all claims or, alternatively, to stay the proceedings of the federal claims.

■ This is the second time Defendants' motion is before this court. In an earlier opinion issued in this case, *Jarvis v. Dean Witter Reynolds, Inc.,* No. 83–383 (D.Vt. Feb. 13, 1985), we denied Defendants' motion to compel arbitration on the ground that the federal and state claims were so inextricably intertwined that they should be heard in the same proceeding. Since our decision,[1] however, the Supreme Court has expressly rejected the doctrine on which our holding was based and ruled that the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982), requires district courts to compel arbitration of pendent arbitrable claims upon a party's motion to compel. Having reconsidered Defendants' motion under the law as it now stands, we hereby GRANT Defendants' motion to compel arbitration of both the federal and the state claims.

*Background*

Because of the familiarity with the facts of this case by the parties, the facts, as alleged, require only a brief summary. Plaintiff Tim Jarvis, a young, inexperienced investor, opened up an account with Dean Witter in November, 1982. Plaintiff claims that he informed the Dean Witter representative, Defendant Woodworth, that he was interested in investing in stable, high tech companies. Based on the reputation of Dean Witter and on Woodworth's representation that he could double Plaintiff's initial investment of $32,000 in one year, Plaintiff authorized Woodworth to buy and sell securities in his account, provided that Woodworth inform him of each purchase or sale before it was made.

According to Plaintiff, Defendants immediately began to buy and sell securities, and to trade stock options, without Plaintiff's prior approval and without having provided Plaintiff with any options prospectus. Plaintiff claims that such trading was excessive in terms of size and frequency. Based on further representations of De-

---

1. After their motion was denied, Defendants took an interlocutory appeal from this court's order. While the appeal was pending, the Supreme Court issued *Byrd, infra,* holding that district courts must compel arbitration of pen- dent arbitrable claims upon a party's motion to compel. Pursuant to a stipulation by the parties, the Second Circuit has remanded the case to this court.

fendants, Plaintiff invested an additional sum of approximately $6,000.

Plaintiff claims that he never executed any written options agreement with Defendants until January 19, 1983, when Woodworth informed him that Plaintiff's option agreement was lost and requested that he sign another.[2] The options agreement contained the following arbitration clause:

Any controversy between us arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration.

Section 6, Options Trading Agreement, ¶ 16 Amended Complaint.

In March, 1983, Plaintiff changed account executives at Dean Witter. By July, 1983, Plaintiff claims, Defendants had lost a substantial portion of his account.

The issue presently before the court is whether the options trading agreement executed by the parties mandates arbitration or whether some or all of Plaintiff's claims may be litigated in this court.

### DISCUSSION

1. *Determination of the validity of the arbitration clause.*

There are two preliminary issues which arise in ruling on a motion to compel arbitration: one, whether a valid arbitration agreement exists and second, whether the court or the arbitrator should determine the validity of the arbitration agreement. Defendants assert that the question of the validity of the arbitration clause contained in the option agreement is a question for the arbitrator; Plaintiff contends that it is for the court.

2. On June 24, 1985, at a rehearing on the motion to compel arbitration in light of *Byrd*, Defendants presented to the court for the first time a Securities Account Agreement signed by the Plaintiff on November 12, 1982, which contains a substantially similar arbitration clause to that in the options contract. This document adds nothing to the discussion on Defendants' motion to compel. We agree with the Plaintiff that this case primarily concerns allegedly fraudulent churning of options and that, therefore, the Securities Account Agreement, is not particularly

The law in this area has been clearly set forth in *Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In that case a consulting contract between the parties contained an arbitration clause similar to that currently in issue. Plaintiff sought to invalidate the arbitration clause on the ground that defendant fraudulently induced it to enter into the consulting agreement. The court held that since the claim of fraud was not directed at the arbitration clause itself, the issue of fraudulent inducement as to the entire agreement was an issue for the arbitrator to decide. *Id.*, at 406, 87 S.Ct. at 1807.

In devising the above analysis, the Court relied on section 4 of the Arbitration Act, which provides a remedy to a party seeking to compel compliance with an arbitration agreement. Under section 4, as soon as jurisdiction but for the existence of the arbitration clause is established, the federal court, once it is satisfied that "the making of the agreement for arbitration or the failure to comply ... is not in issue, is instructed to order arbitration to proceed." *Id.*, at 403, 87 S.Ct. at 1806. Thus, to raise an issue as to the making of the agreement to arbitrate there must be a specific allegation that the arbitration clause, taken separately, was induced by fraud.

Plaintiff claims that his allegations of fraudulent inducement "implicate specifically the agreement to arbitrate itself," as opposed to the entire contract. Plaintiff's Supp. Reply Brief, at 9. *See* ¶ 52a Amended Complaint. As support, Plaintiff relies on *Moseley v. Electronic & Missile Facilities, Inc.*, 374 U.S. 167, 83 S.Ct. 1815, 10

relevant. Even if it were on point, however, it would not change the court's decision that an arbitrator should decide whether or not the contract is enforceable because it contains a substantially similar arbitration clause as that contained in the options contract. Moreover, there is no serious allegation that the arbitration clause in the Securities Account Agreement *itself* was procured through fraud. Further, the evidence in this case indicates that Plaintiff freely signed that contract. Deposition of Tim Jarvis, at 55, 57.

L.Ed.2d 818 (1963). In *Moseley* a plumbing and heating subcontractor, seeking compensation in the amount of $125,000, for work performed in Georgia, brought suit against the prime contractor, who had instituted arbitration proceedings in New York under provisions of a subcontract, alleging breach of contract or, alternatively, recission for fraud.[3] Petitioner attacked both the subcontracts and the arbitration provision. Petitioner claimed that the subcontract with him, as well as with other subcontractors, was part of a fraudulent scheme to obtain work and materials from the subcontractors while forcing them to accept much less than the value of their claims. To effect the fraudulent scheme, petitioner contended that the prime contractor inserted an arbitration clause requiring arbitration in New York, despite the fact that the place of performance was Georgia. After determining that the allegation of fraud "goes to the arbitration clause itself," *id.*, the Court determined that the court, and not the arbitrator, should rule on the issue of the validity of the arbitration clause.

Plaintiff claims that his allegation of fraud is similar to that of the petitioner in *Moseley*, since he has alleged that he was induced to sign the option agreement, which included an arbitration clause, "as part of a pattern and scheme of fraud."

We are not persuaded by Plaintiff's analogy. *Moseley* is distinguishable from the instant case in at least one significant respect. The petitioner in that case alleged that the arbitration clause *itself* was procured by fraud. The clause stated that arbitration would occur in New York City. By providing that arbitration would take place in New York, instead of in Georgia, where the worksite was located and the subcontracts performed, the subcontract gave the prime contractor the right to nullify the provisions of the Miller Act, which expressly guarantees a plaintiff's right to sue on a contract in federal court *in the district in which the contract was to be performed* —which was Georgia, not New York.

■ In contrast to the petitioner in *Moseley*, Plaintiff Jarvis has not alleged anything fraudulent about the arbitration clause itself. The language of his amendment to the complaint makes it clear that the fraudulent inducement claim goes to the signing of the option agreement as a whole, of which the arbitration clause is but one provision:

> Defendants fraudulently induced and coerced Plaintiff to *sign the option agreement* dated January 19, 1983, and specifically the arbitration provisions therein …

Amended Complaint ¶ 52e (emphasis supplied).

■ Absent a showing that the arbitration clause itself was impermissibly obtained, we are bound to submit the matter to an arbitrator. *Prima Paint, supra,* at 403–404, 87 S.Ct. at 1805–1806. "[Section 4 of the Arbitration Act] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id. See also Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 858–89, 79 L.Ed.2d 1 (1984); *Sharon Steel Corp. v. Jewell Coal and Coke Co.,* 735 F.2d 775 (3rd Cir.1984). *See generally* Annot., 11 A.L.R. 4th 774 (1982).

Recently, the Supreme Court had occasion to address the issue of the enforceability of arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In considering a motion to compel arbitration, the Court emphasized the strong presumption in favor of arbitrability: " 'The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " *id.*, at ——, 105 S.Ct. at 1242, *quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103

---

**3.** For a more elaborate discussion of the factual background of *Moseley, supra,* see the opinion of the lower court. *Electronic & Missile Facili-* *ties, Inc., v. United States,* 306 F.2d 554 (5th Cir.1962).

S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983). Moreover, the Court pointed out that under the Arbitration Act a district court has no discretion to hear matters that the parties have agreed to arbitrate: "By its terms, the Act leaves no place for the exercise of discretion by a District Court, but instead mandates that District Courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.*, —— U.S. at ——, 105 S.Ct. at 1241.

■ In the instant case the parties signed an options contract which contained an arbitration clause.[4] Since we do not find that Plaintiff has raised a specific claim of fraud in the inducement of the arbitration clause itself, we order that this matter proceed to arbitration.

### 2. *Arbitrability of Pendent Claims*

In *Byrd*, the Supreme Court also issued a clear pronouncement on the issue of the arbitrability of pendent state law claims. Confronted with a complaint raising factually inseparable federal securities claims and pendent claims, the Supreme Court rejected the intertwining doctrine, under which a district court would hear both fed-

eral and state claims, holding that "the Arbitration Act *requires* district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.*, at ——, 105 S.Ct. at 1241 (emphasis added).

In addition, the Byrd Court instructed district courts that arbitration of pendent claims should not be stayed for fear of the preclusive effect of parallel arbitration proceedings:

> ... neither a stay of proceedings, nor joined proceedings, is necessary to protect the federal interest in the federal -court proceeding, and ... the formulation of collateral-estoppel rules affords adequate protection to that interest.

*Id.*, at ——, 105 S.Ct. at 1243.

■ In light of the clear directive in *Byrd*, we grant Defendants' motion to compel arbitration of Plaintiff's state law claims.[5]

### 3. *Arbitrability of Plaintiff's Federal Claims*

Plaintiff's federal claims arise under the Securities Exchange Act of 1934, 15 U.S.C.

---

**4.** Plaintiff claims that the arbitration agreement contained in the options contract applies only to Dean Witter and not to Defendants Sullivan and Woodworth. We find this argument to be without merit. The first phrase of the arbitration agreement provides that "[a]ny controversy between *us,* arising out of or relating to this agreement ... shall be arbitrated." (emphasis added). From other Dean Witter documents, it is clear that "any controversy between 'us' " means contracts between customers and Dean Witter, including Dean Witter's agents. *See e.g.,* Securities Account Agreement, appended to Defendant's Memorandum, filed June 17, 1985 (which provides that all transactions entered into, where "executed by DWR or its agents," shall be subject to the rules, regulations, and customs of the exchange or market). Since Sullivan and Woodworth are agents of Dean Witter, we think that the arbitration clause contained in the options contract covers their activity. Further, it is well settled that a principal, such as Dean Witter, is liable to third parties for all tortious acts committed by an agent within the scope of his authority even though the principal did not expressly direct his agent to commit the act. *Employers' Liability Assur. Corp. v. L.J. Marcotte*

*Ins. Agency,* 314 F.2d 470 (8th Cir.1963). We think that the arbitration agreement in the options contract applies to Sullivan and Woodworth as employees and agents of Dean Witter.

**5.** In a letter dated July 17, 1985, Plaintiff's counsel argues that the arbitration agreement is voidable because there existed a fiduciary relationship between Dean Witter and Jarvis, under which Dean Witter had an obligation to provide Plaintiff with "full understanding of his legal rights and of all relevant facts that the fiduciary knows or should know." Rest. 2d Contracts, § 173, Comment a. Whether the parties' broker-customer relationship rises to a fiduciary relationship is a question of fact. *Fey v. Walston & Co., Inc.,* 493 F.2d 1036, 1049 (7th Cir. 1974); *Russo v. Bache Halsey Stuart Shields, Inc.,* 554 F.Supp. 613, 621 (N.D.Ill.1982). Even if a fiduciary relationship does exist between these parties, however, this court may not decide this issue as it is a pendent state law claim which must, pursuant to *Byrd, supra,* be sent to arbitration. Moreover, Plaintiff has already raised this claim in Count V of the Complaint. Thus, to raise it again at this point is redundant.

§ 78j(b) (1982). In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that federal claims arising under the 1933 Act were non-arbitrable. Since *Wilko* it has been widely held by courts in other circuits that the doctrine advanced in that case applies to *both* the 1933 and the 1934 Acts. *See e.g., DeLancie v. Birr, Wilson & Co.*, 648 F.2d 1255, 1257–59 (9th Cir.1981); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 590 F.2d 823, 827–29 (10th Cir.1978); *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith*, 558 F.2d 831, 833–35 (7th Cir. 1977); *Sibley v. Tandy Corp.*, 543 F.2d 540, 543 n. 3 (5th Cir.1976) *reh'g denied*, 547 F.2d 286, *cert. den.* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). Thus, under the rationale of the above cases, Plaintiff's 1934 Act claim would be non-arbitrable.

The Second Circuit has leaned in the direction of applying *Wilko* to the 1934 Act, but has not been obliged to take a definitive stance. In *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 183 n. 5 (2d Cir.), *cert. den.* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), Judge Friendly noted in dictum that the provision in the 1933 Act on which the Court relied in *Wilko* —section 14—is "almost identical" to section 29(a) of the 1934 Act and that a distinction between the two acts "would seem unlikely." *Id.*

Although the Supreme Court has also taken notice of the similarity between section 14 of the 1933 Act and section 29(a) of the 1934 Act, specifically, the fact that both sections bar "waiver of compliance with any 'provision'" of the two acts, it has noted that the provisions of the two acts [6] are different and has questioned the extension of *Wilko* to the 1934 Act. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 514, 94 S.Ct. 2449, 2454, 41 L.Ed.2d 270 (1974).

In *Scherk* the Supreme Court, without deciding the issue, expressed reservations about the applicability of *Wilko* to the 1934 Act. *Id.*, at 513–14, 94 S.Ct. at 2454–55. The Court explained that *Wilko* involved an action brought under section 12(2) of the 1933 Act which provides a defrauded purchaser with the "special" right of a private remedy for civil liability. *Id.* The 1934 Act, however, has no counterpart. Moreover, unlike the 1933 Act, it has a judicially implied, rather than an express, remedy for violations of section 10(b) and Rule 10b–5. "[T]he [1934 Act] does not establish the 'special right' that the Court in *Wilko* found significant." *Id.*, at 514, 94 S.Ct. at 2454. Finally, the jurisdictional provisions of the two acts differ. Under the 1933 Act, a plaintiff can bring suit in either federal or state court. The 1934 Act, in contrast, gives "exclusive jurisdiction" to federal district courts.

In *Byrd* the Supreme Court left open the question of whether section 10(b) securities claims under the 1934 Act are subject to arbitration, for the reason that the defendant in that case had apparently assumed that claims under the 1934 Act were within the scope of *Wilko*. Although it did not address the issue directly, the Court, in a footnote, signaled the advent of a future holding by pointing out significant differences between the two securities acts and by reiterating that it had questioned the practice of applying *Wilko* to the 1934 Act in *Scherk, supra*. *Byrd*, —— U.S. at ——— n. 1, 105 S.Ct. at 1240 n. 1.

In his concurring opinion, Justice White suggested that *Wilko*'s concern for preserving a plaintiff's federal cause of action in the face of arbitration is not necessarily transferable to the 1934 Act because that act "is judicially implied and not so different from the common law [fraud] action." at ——, 105 S.Ct. at 1244. Stressing that

---

**6.** Section 14 of the Securities Act of 1933, 15 U.S.C. § 77n, provides as follows:

Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

Section 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(a), provides:

Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

**1152**

*Wilko* is not "mechanically" applicable to 1934 Act claims, he concluded that the premise that claims arising under the 1934 Act are not arbitrable "is a matter of substantial doubt." *Id.*

In light of the Supreme Court's ruling in *Byrd,* we doubt that the decisions cited above—holding that 1934 Act claims are non-arbitrable—retain viability. In recent weeks, at least four other federal district courts, on the strength of *Byrd,* have held that claims arising under the federal securities laws are arbitrable. *See Gregory v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 84–1647 (M.D.Fla. March 9, 1985) (ordering arbitration of 10b–5 claims); *accord, Niven v. Dean Witter Reynolds, Inc.,* [Current] Fed.Sec.L.Rep. (CCH) ¶ 92,-059 (M.D.Fla. March 28, 1985); *Greenstein v. First Biscayne Corporation, et al.,* No. 84–1594 (S.D.Fla. May 16, 1985); *see also Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc. et al.,* No. C83–65A (N.D.Ga. May 16, 1985) (ordering arbitration of 10b–5 claims and removing the case from court's July trial calendar).

■ Given the strong national policy favoring arbitration, *see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the *Byrd* decision, and the decisions of other federal courts in the wake of *Byrd,* we think that there is abundant authority for submitting Plaintiff's 1934 Act claims, as well as the state claims, to arbitration. Accordingly, we hereby GRANT Defendants' motion to compel arbitration of both the state and federal claims.

The action is stayed pending arbitration of the claims stated in the complaint, providing any party applies for arbitration within thirty (30) days of this date. If such application is made and the arbitration proceedings go forward the stay will remain in effect until the arbitrator's final decision is rendered and filed with the court and/or until further order of the court. Within 60 days of the date hereof counsel for the defendant shall inform the court in writing of the status of the proceedings at that time.