**Harvey PRAWER, Plaintiff,**

v.

**DEAN WITTER REYNOLDS, INC. and Lawrence J. Canavan, Defendants.**

Civ. A. 85–2630–MA.

United States District Court,
D. Massachusetts.

Nov. 18, 1985.

Nancy E. Watters, Nutter, McClennen & Fish, Boston, Mass., for plaintiff.

Gerald F. Rath, David C. Boch, Herrick & Smith, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This matter is before the Court on a motion to dismiss and to compel arbitration filed by the defendants, Dean Witter Reynolds, Inc. (Dean Witter) and Lawrence J. Canavan. Dean Witter is a securities broker-dealer; Canavan is a Dean Witter account executive who handled Prawer's margin account beginning in February, 1983. The plaintiff, Harvey Prawer, opened a non-margin brokerage account in December 1980 and in May 1981, he opened a margin account. Claiming that Dean Witter traded his account without his prior consent, that Dean Witter made inappropriately speculative investments on his behalf, and that the value of the account declined by some $250,000 between July 1983 and March 1985, Prawer filed a complaint alleging a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5, of section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l (2), and of various state securities and common law provisions.

### I.

When Prawer invested his funds in a Dean Witter margin account in May 1981, he signed a "Customer's Agreement" providing that any controversy between Dean Witter and Prawer "arising out of or relating to this contract or the breach thereof, shall be settled by arbitration ..." Prawer has agreed to submit his state law claims to arbitration. Dean Witter seeks an order compelling arbitration of Prawer's section 10(b) and Rule 10b–5 claim. Prawer opposes the motion, asserting that a pre-dispute agreement to arbitrate claims that arise under the Securities Exchange Act of 1934 is unenforceable. Dean Witter has also moved to dismiss the section 12(2) claim, arguing it fails to state a claim and is untimely. For the reasons stated below, this Court finds that the arbitration agreement is enforceable. The section 12(2) claim, however, is not subject to arbitration and will not be dismissed.

### II.

Dean Witter contends that the section 12(2) claim is untimely and, in any event, fails to state a claim.

Claims arising under section 12(2) must be brought within one year after the discovery of an untrue statement or omission in the sale of the security. 15 U.S.C. § 77m. The most recent securities purchase for Prawer's account apparently occurred no later than July 1983. This action was filed in June 1985, almost two years later. Prawer's claim would appear to be time-barred.

Prawer, however, contends that the statutory limitations period was tolled because Dean Witter purposely kept information from him. Prawer alleges that no Dean Witter representative told him that Canavan, his account representative, personally held interests in several of the securities he had recommended to Prawer. Apparently Prawer also contends that Dean Witter held interests in these securities. Prawer did not discover Canavan's or Dean Witter's securities holdings until March 1985.

Assuming that Prawer satisfies his due diligence burden, *see Cook v. Avien*, 573 F.2d 685 (1st Cir.1978), the question is whether this omission states a claim for relief under section 12(2). There are two issues: (1) was the failure to disclose Canavan's personal holdings or Dean Witter's holdings an omission of material facts; and (2) even if it was, can Dean Witter be liable under section 12(2) as a person who offered

or sold a security by means of a prospectus or oral communication.

■ It was deceptive not to disclose Canavan's personal holdings or Dean Witter's holdings, Prawer argues, both when Canavan convinced Prawer to buy the securities and when Canavan recommended against selling those securities to cover margin calls. It is difficult to see how knowledge of Canavan's personal holdings would have affected Prawer's decision to sell other securities to pay for margin calls, even though it is, perhaps, obvious that Canavan might have had a self-interested motive for making that recommendation. *See TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). However, knowing that Canavan and Dean Witter had interests in the securities whose purchase Canavan was recommending could well have influenced Prawer's decision whether to follow Canavan's recommendation to buy those securities. *Leib v. Merrill Lynch, Pierce, Fenner & Smith*, 461 F.Supp. 951, 953 (E.D.Mich.1978) (among broker's duties to customer is to "refrain from self-dealing or refusing to disclose any personal interest the broker may have in a particular recommended security"). Prawer might perhaps have suspected that Canavan was hoping to stimulate market activity in those securities for his own benefit, and was not giving the disinterested advice he hoped to receive from his account executive. It would certainly have been material if Dean Witter was making a market in the securities, acting in the transactions as a principal rather than simply an agent for Prawer. *See, e.g., McIlroy v. Dittmer*, 732 F.2d 98, 103 (8th Cir.1984); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1268 (9th Cir.1979); *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167, 1172 (2d Cir.1970). Taking all the factual assertions in Prawer's complaint as true, and drawing all reasonable factual inferences in Prawer's favor as this Court must do, *Kennedy v. Josephthal & Co.*, ¶ 99,204 Fed.Sec.L.Rep. (CCH) (D.Mass.1983), there are allegations in the complaint to support either theory.

■ Dean Witter also contends that Prawer's section 12(2) claim must be dismissed because Dean Witter acted merely as an agent for Prawer and so did not offer or sell any securities to him. The amended complaint, in other words, fails to establish the requisite buyer-seller privity. If Dean Witter was acting as a principal—buying securities and remarketing them to its customers—any misrepresentations or omissions it made would have been made in connection with the sale of securities. It is possible to find that allegation in Prawer's amended complaint. Prawer avers that he bought the securities "from" Dean Witter, Amended Complaint at ¶ 22, and that Dean Witter offered and "sold" the securities to Prawer, Amended Complaint at ¶ 46. *See In re Catanella & E.F. Hutton & Company*, 583 F.Supp. 1388 (E.D.Pa.1984)(finding nearly identical language of a complaint "susceptible to the interpretation" that a broker offered and sold securities "to plaintiffs, rather than just purchasing stock on the open market for their accounts"). While Prawer's allegation "may simply parrot the statutory language," *id.* at 1418, on a motion to dismiss, all inferences must be drawn in favor of the non-moving party. I am unable to conclude "beyond doubt that the plaintiff can prove no set of facts...which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Accordingly, Dean Witter's motion to dismiss Prawer's section 12(2) claim must be denied.

### III.

The issue of whether to enforce agreements to arbitrate claims arising under section 10(b) and Rule 10b–5 has never been definitively decided by the Supreme Court. In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1983), the Court held unenforceable an agreement to arbitrate claims arising under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2). The plaintiff in *Wilko* had signed an agreement containing a pre-dispute arbitration clause. The Court determined that to or-

der arbitration would contradict section 14 of the Securities Act, 15 U.S.C. § 77n, which voids "any condition, stipulation, or provision binding any person...to waive compliance with any provision" of the Securities Act. In *Scherk v. Alberto Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court questioned *Wilko*'s application to a claim arising under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder. The Securities Exchange Act of 1934 does "not establish the 'special right' that the Court in *Wilko* found significant." *Scherk*, 417 U.S. at 514, 94 S.Ct. at 2454. Unlike section 12(2) of the 1933 Act, section 10(b) and Rule 10b–5 do not expressly provide a right of action; instead a private right of action has been implied by the courts. The *Scherk* Court also noted that jurisdiction under the 1934 Act is narrower than under the 1933 Act, being restricted to the federal courts, 15 U.S.C. § 78aa, while the 1933 Act allows suit in any state or federal court of competent jurisdiction and provides for nationwide service of process. 15 U.S.C. §§ 77n, 77*l* (2), 77v. *Id.*

In March 1985, in *Dean Witter Reynolds, Inc. v. Byrd*, — U.S. —, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Supreme Court repeated these doubts about the scope of the *Wilko* doctrine. In *Byrd*, the Court held that when a complaint raises both federal securities law claims and pendent state claims, and the parties have signed an agreement to arbitrate their disputes, the Federal Arbitration Act, 9 U.S.C. §§ 1–14, requires the district court to compel arbitration of pendent arbitrable claims even when the result would be the possibly inefficient maintenance of separate proceedings in different forums. However, the *Byrd* Court, though it noted that it had recently "questioned the applicability of *Wilko* to a claim arising under § 10(b) of the Securities Exchange Act of 1934," *Byrd*, 105 S.Ct. at 1240 n. 1, specifically declined to consider the issue of whether section 10(b) and Rule 10b–5 violations which are subject to an arbitration agreement, should be referred to arbitration. *Id.* Dean Witter, apparently assuming that the federal securities law claim was not subject to the arbitration provision of the contract, had not asked the district court to compel arbitration of that claim.

Justice White, however, in a concurring opinion, went further. Stating that "*Wilko*'s reasoning cannot be mechanically transplanted to the 1934 Act," *id.* at 1244, he emphasized that the question "remains open and the contrary holdings of the lower courts must be viewed with some doubt." *Id. Wilko* relied on three statutory provisions of the 1933 Act: the non-waiver provision which voids any "stipulation...binding any person acquiring any security to waive compliance with any provision" of the Act, 15 U.S.C. § 77n; the "special right to recover for misrepresentation," 15 U.S.C. § 77*l* (2); and, the broad jurisdictional provision which allows suit in any state or federal court of competent jurisdiction, 15 U.S.C. § 77v. While the 1934 Act has a comparable non-waiver provision, 15 U.S.C. § 78cc(a), there are no counterparts to the other two provisions. Because the cause of action for section 10(b) and Rule 10b–5 violations is judicially implied and not expressly created by a statutory provision, the "phrase 'waive compliance with any *provision of this chapter*,' 15 U.S.C. § 78cc(a) (emphasis added), is thus literally inapplicable." *Byrd*, 105 S.Ct. at 1244. Finally, Justice White suggested that "*Wilko*'s solicitude for the federal cause of action—the "special right" established by Congress—is not necessarily appropriate where the cause of action is judicially implied and not so different from the common law action." *Id.*

Dean Witter contends that this language means that claims brought under the implied remedy provisions of the federal securities laws stand on an entirely different footing than claims brought under the express remedy of section 12(2) of the Securities Act of 1933. In support of this Dean Witter calls this Court's attention to a number of district court decisions since *Byrd* holding that claims such as Prawer's, brought pursuant to the implied remedy provisions of section 10(b) and Rule 10b–5

of the Securities Exchange Act, must be arbitrated if they are subject to an arbitration agreement. Though these decisions are not, of course, controlling on this Court, they are nonetheless instructive. *See McMahon v. Shearson/American Express, Inc.,* 618 F.Supp. 384 (S.D.N.Y.1985); *Ross v. Mathis,* 624 F.Supp. 110 (N.D.Ga. 1985); *Land v. Dean Witter Reynolds, Inc.,* 617 F.Supp. 52 (E.D.Va.1985); *West v. Drexel Burnham Lambert, Inc.,* 623 F.Supp. 26 (W.D.Wash.1985); *Jarvis v. Dean Witter Reynolds, Inc.,* 614 F.Supp. 1146 (D.Vt.1985); *Johnson v. Kidder Peabody & Co., Inc.,* No. 85 CV–178 (N.D.N.Y. July 30, 1985); *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* No. 83–2851–C (D.Mass. July 16, 1985); *Finn v. Davis,* 610 F.Supp. 1079 (S.D.Fla.1985); *Mann v. Foster & Marshall/American Express, Inc.,* No. C84–925D (W.D.Wash. June 3, 1985); *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 83–685–A (N.D.Ga. May 16, 1985); *Greenstein v. First Biscayne Corp.,* No. 82–0584–Civ–Hastings (S.D.Fla. May 16, 1985); *Niven v. Dean Witter Reynolds, Inc.,* No. 84–1594–Civ–T–10 (M.D.Fla. Mar. 28, 1985); *Gregory v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 84–1647–Civ–T–10 (M.D. Fla. Mar. 9, 1985).

Unlike several other circuits, the First Circuit has never applied *Wilko* to a claim arising under section 10(b) of the Securities Exchange Act of 1934, and never held that agreements to arbitrate such claims are therefore unenforceable. In *Ingbar v. Drexel Burnham Lambert, Inc.,* 683 F.2d 603 (1st Cir.1982), the First Circuit rejected the argument that *Wilko* makes unenforceable predispute broker-customer arbitration agreements covering claims arising under the Commodity Exchange Act, 7 U.S.C. §§ 1–24. If the *Ingbar* court observed that the *Wilko* doctrine had been extended to

claims under the Securities Exchange Act of 1934 by other circuits, *id.* at 605, it also cited the Supreme Court's skeptical and cautionary language in *Scherk. Id. Wilko,* the *Ingbar* court reasoned, turned on specific statutory provisions of the Securities Act of 1933; the 1934 Act contains a "similar anti-waiver provision." *Id.* In contrast, the Commodity Exchange Act has no provisions similar to the 1933 Act. I cannot agree with Prawer that *Ingbar* endorsed the expansion of the *Wilko* doctrine to section 10(b) or Rule 10b–5 claims. First, it is simply dicta. More important, it is certainly not an unambiguous and ringing endorsement. The careful citation to *Scherk* suggests that, at a minimum, the First Circuit recognized that *Wilko's* reasoning cannot be, as Justice White wrote in *Byrd,* "mechanically transplanted to the 1934 Act." *Byrd,* 105 S.Ct. at 1244.

In the absence of controlling First Circuit precedent, this Court must decide on its own the applicability of *Wilko* to these claims under section 10(b) and Rule 10b–5. Given the strong federal policy in favor of arbitration agreements, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), Justice White's concurring opinion in *Byrd,* the Supreme Court's reservations in *Scherk* and the host of lower federal court decisions since *Byrd,* this Court believes there is ample authority on which to base a decision requiring Prawer to arbitrate his section 10(b) and Rule 10b–5 claims against Dean Witter. The district court cases decided after *Byrd* declining to compel arbitration of section 10(b) and Rule 10b–5 claims do not persuade me otherwise.[1]

---

1. Prawer calls this Court's attention to a number of post-*Byrd* lower federal court decisions refusing to compel arbitration of section 10(b) and Rule 10b–5 claims. *See, e.g., Webb v. R. Rowland & Co., Inc.,* 613 F.Supp. 1123 (E.D.Mo. 1985); *Rojas Cancanon v. Smith Barney, Harris Upham & Co.,* 612 F.Supp. 996 (S.D.Fla.1985); *Gorman v. Merill Lynch, Pierce, Fenner & Smith,* *Inc.,* 609 F.Supp. 1054 (S.D.Fla.1985); *Green v. Shearson Lehman/American Express, Inc.,* No. 85–1368 (E.D.Pa. Sept. 10, 1985); *Scharp v. Cralin,* 617 F.Supp. 476 (S.D.Fla.1985); *Gibson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 84 C 7542 (N.D.Ill. June 18, 1985); *Dini v. Dean Witter Reynolds, Inc.,* No. CA 84–4138–T (D.Mass. May 22, 1985).

*Conclusion*

In light of the foregoing, Dean Witter's motion to dismiss Prawer's section 12(2) claim is denied. The motion to compel arbitration of the section 10(b) and Rule 10b–5 claim is granted.

SO ORDERED.

With the exception of *Dini,* each of these cases turned on pre-*Byrd* controlling precedent from the circuit court. As the Supreme Court noted in *Byrd,* the Fifth, Seventh, Ninth and Tenth Circuits have all extended the *Wilko* doctrine to predispute agreements to arbitrate claims arising under section 10(b) and Rule 10b–5. In the cases cited by Prawer, the courts acknowledged the strong federal policy in favor of arbitration and the Supreme Court's hints that the *Wilko* doctrine might be limited to section 12(2) claims, but concluded that *Byrd* did not overrule the controlling circuit court precedents. While these cases might support the proposition that *Byrd* has not overruled these circuit court opinions extending *Wilko,* they do not provide support for the position that the *Wilko* doctrine is applicable to section 10(b) and Rule 10b–5 claims. To the extent that these opinions do discuss the applicability of *Wilko,* they support Dean Witter's position. They are not apposite here, however, because the First Circuit never extended the *Wilko* doctrine to section 10(b) and Rule 10b–5 claims, and so there is no controlling precedent waiting to be overruled.