KYUNG IN LEE, Plaintiff,

v.

PACIFIC BULLION (NEW YORK) INC., Defendant.

No. CV–91–4073.

United States District Court, E.D. New York.

April 13, 1992.

Maria Cholakis, Hill Rivkins Loesberg O'Brien Mulroy & Hayden, New York City, for plaintiff.

Ronald D. Hariri, Law Offices of Herman Sassower, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff Kyung In Lee filed this diversity action in the aftermath of a series of financial transactions with defendant Pacific Bullion ("Pacific"). Lee alleges that defendant, a commodity brokerage specializing in precious metals and foreign currency, fraudulently induced her to invest money and caused her to sustain losses as a result. Lee also asserts that defendant fraudulently caused her to execute a written agreement governing their relationship.

Specifically, plaintiff alleges that on May 28, 1991, she went to Pacific's offices in response to an advertisement in a Korean-language newspaper. Lee Aff. Exh. B. Lee states that an account executive advised her that if she invested with Pacific, her money would be guaranteed and she would be assured a profit of 10–20% per month. These discussions took place entirely in Korean, as Lee allegedly neither reads nor speaks more than a bare minimum of English.

Plaintiff also claims that on May 28 she was asked in Korean to sign documents which Pacific's representative allegedly stated were "simply documents necessary for defendant to deposit my monies and open an account." Lee Aff. ¶ 6. Despite the fact that the documents were in English and plaintiff speaks only Korean, plaintiff signed the documents without having them translated. The "documents" in question are Pacific's standard "Customer's Agreement & Rules For Trading" form ("the Agreement"). In addition to a prominent risk disclosure statement, the Agreement includes the following provision:

16. Any dispute arising under each contract between us is to be settled by Arbitration or by Court Proceedings in your absolute discretion which shall be binding absolutely on me/us.

In the period after May 28, plaintiff suffered losses to her account as a result of trades executed by Pacific. Plaintiff opted to change her account executive thereafter, apparently as a result of those losses, and executed new copies of the Agreement on June 17 and July 12. During the period from May through July 1991, plaintiff invested approximately $270,000 with Pacific, and incurred losses in excess of $85,000.

Pacific now seeks to exercise its prerogative under the Agreement to arbitrate this dispute, and moves for an order dismissing the action and compelling arbitration.

### DISCUSSION

Title 9, section 2 of the United States Code reads in pertinent part:

A written provision in any ... contract evidencing a transaction in commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 3 of Title 9 provides that

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

In this case, there is a written provision within the meaning of section 2. Moreover, defendant Pacific has made a proper application as required by section 3. Accordingly, the resolution of this motion must turn on the validity of the arbitration clause itself, a factor addressed in section 4:

[U]pon being satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

■ Thus, the crux of the matter now before the court is whether or not "the making of the agreement for arbitration" has been placed in issue. The seminal Supreme Court case in this area is *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In that case, Prima Paint argued that it should not be bound by an arbitration clause in the contract signed by the parties, claiming that it had signed the contract as a direct result of false promises made by Flood & Conklin. *Id.* at 398–99, 87 S.Ct. at 1803–04. The Supreme Court rejected this argument, stating that

if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. [footnote omitted] But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Id.* at 403–04, 87 S.Ct. at 1805–06. In effect, the Court reasoned that the arbitration clause constituted a severable agreement apart from the contract which contained it.

Pacific rests its motion on *Prima Paint* and on the myriad cases citing its universally accepted holding. *See, e.g., Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538 (10th Cir.1987); *Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.*, 408 F.2d 606, 610 (2d Cir.1969); *Brener v. Becker Paribas Inc.*, 628 F.Supp. 442, 446 (S.D.N.Y. 1985); *Jarvis v. Dean Witter Reynolds, Inc.*, 614 F.Supp. 1146, 1148–49 (D.Vt. 1985). Nevertheless, this court must deny Pacific's motion on the grounds that *Prima Paint* does not govern this case.

To understand why *Prima Paint* does not emphatically compel a grant of defendant's motion, it is essential to analyze the specific claims of fraud made here. In the first instance, Lee asserts that Pacific fraudulently induced her to invest money

by making false promises regarding both the security of her investment and the certainty of profit. This claim manifestly falls within the ambit of *Prima Paint*, as Lee's allegations in this regard reach only the making of the contract overall rather than the making of the arbitration clause. However, Lee also argues that her signature on the Agreement was itself obtained by fraud. Specifically, Lee asserts that Pacific, knowing that Lee was unable to read English, presented the Agreement for her signature as a mere "administrative" document, and affirmatively concealed from her that it was in fact a contract setting forth the terms of a binding agreement.

■■■ Where such a "fraud in the factum"[1] is alleged, the *Prima Paint* notion of the severability of the arbitration clause has no application.[2] In raising a claim of fraudulent inducement of contract, a party must argue that its knowing assent to the terms of the contract followed from a false promise by the other side. Thus, unless the specific arbitration provision *itself* was obtained via a false promise, the signatory has fairly agreed to submit disputes to arbitration. By contrast, where fraud in the factum of the entire contract is alleged, it makes no sense to apply *Prima Paint*'s requirement of a specific attack on the making of the arbitration clause itself. If no agreement ever arose between the parties, there can be no severable agreement to arbitrate. Similarly, if a party's signature were forged on a contract, it would be absurd to require arbitration if the party attacking the contract as void failed to allege that the arbitration clause itself was fraudulently obtained.

The majority of courts which have confronted this question directly have held that a *bona fide* claim of fraud in the factum as to the entire contract takes a case outside the rule of *Prima Paint*. In *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998 (11th Cir.1986) (per curiam), the court considered facts almost identical to those presented here. In *Cancanon*, plaintiffs alleged that Smith Barney took advantage of their inability to read English, and persuaded them to sign securities account agreements by misrepresenting the character of those documents. *Id.* at 999. Noting that plaintiffs had thereby made out a clear facial case of fraud in the factum, the Eleventh Circuit held that the "making" of the arbitration clause was contested within the meaning of 9 U.S.C. § 4, and that defendant was therefore not entitled to an immediate order of referral to arbitration. *Id.; see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991); *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 53–55 (3d Cir. 1980); *New England Mackintosh Co. v. Carleton Woolen Mills*, 1988 WL 136269, 1988 U.S.Dist. LEXIS 14179 (D.Mass. Dec. 5, 1988); *Dougherty v. Mieczkowski*, 661 F.Supp. 267, 274 (D.Del.1987); *cf. National R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 761 (D.C.Cir.1988) ("if there was never an agreement to arbitrate, there is no authority to require a party to submit to arbitration"); *American Safety Equip. Corp. v. J.P. Maguire & Co.*, 391

---

1. "A distinction is drawn between misrepresentation that goes only to the 'inducement' and misrepresentation that goes to the 'factum' or the 'execution'.... In rare cases ... the misrepresentation is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect. Such a misrepresentation is said to go to the 'factum' or the 'execution.'" E. Farnsworth, Contracts § 4.10 (2d ed. 1990).

2. Although some language in *Prima Paint* suggests that the rationale of that case extends to fraud in the factum as well as to fraud in the inducement of the contract, a careful reading reveals that the Court's opinion does not sup-

port this interpretation. It is true, for instance, that at one juncture the Court asserts that the parties' arbitration agreement "is easily broad enough to encompass Prima Paint's claim that both execution and acceleration of the consulting agreement itself were procured by fraud." 388 U.S. at 406, 87 S.Ct. at 1807. In fact, however, this description carelessly mischaracterizes Prima Paint's allegation as including a claim of fraud in the factum. As the Court itself notes earlier in the opinion, "the complaint ... alleg[es] only that Prima Paint had been '*fraudulently induced to accelerate the execution* and closing date of the [consulting] agreement....'" *Id.* at 398 n. 2, 87 S.Ct. at 1803 n. 2 (emphasis added).

F.2d 821, 829 (2d Cir.1968) (dispute not referable to arbitration where validity of assignment of contract in issue; "it accomplishes nothing to treat the arbitration clause separately if Maguire is not a party to it"); *Minelli Constr. Co. v. United Derrickmen & Riggers Ass'n, Local 197,* 1990 WL 180550, 1990 U.S.Dist. LEXIS 15214 (S.D.N.Y. Nov. 12, 1990) (fraud in factum claim requires judicial hearing to determine whether collective bargaining agreement enforceable, where signatory could not read English and arguably lacked authority to bind party to agreement); *but see C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Secur. Corp.,* 912 F.2d 1563, 1566 (6th Cir.1990) (apparently rejecting factum/inducement distinction in *Prima Paint* context).

Because Lee has raised a *bona fide* claim of fraud in the factum, this court must hold a trial, pursuant to 9 U.S.C. § 4, to resolve the dispute over the validity of the arbitration agreement. As plaintiff made no jury request on or before the date of the hearing of the present motion, as required by section 4, that proceeding will be a bench trial. Scheduling instructions will issue shortly.

SO ORDERED.