The **FAIRVIEW CEMETERY ASSOCIATION OF STILLWATER, Minnesota,** Respondent,

v.

David W. **ECKBERG,** Defendant,

and

**Paine, Webber, Jackson & Curtis, Inc., Appellant.**

No. C6–85–829.

Supreme Court of Minnesota.

April 18, 1986.

Kurtis A. Greenly, Susan E. Barnes, Minneapolis, for appellant.

Graham Heikes, Carol A. Hooten, St. Paul, for respondent.

Edward M. Laine, St. Paul, for defendant.

AMDAHL, Chief Justice.

This case comes to us as a certified question from the Court of Appeals.[1] The case involves, among other things, the question of whether the United States Supreme Court decision in *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), concerning the supremacy of the Federal Arbitration Act (FAA), overrules to a limited extent this court's decision in *Kiehne v. Purdy*, 309 N.W.2d 60 (Minn. 1981). The Washington County District Court ruled that *Kiehne* was not overruled by *Southland.* The Court of Appeals certified this case to us for accelerated review. We accepted certification and now reverse the trial court. We remand the case to the trial court for further proceedings in conformity with this opinion.

The Fairview Cemetery Association of Stillwater, Minnesota (Fairview), brought this action against its former broker, David W. Eckberg, and Paine, Webber, Jackson & Curtis, Incorporated, seeking damages for the alleged mishandling of Fairview's account. The account allegedly established by Paine Webber included funds from Fairview's perpetual care fund, used for the upkeep of Fairview's property. Fairview's complaint alleged violations of the federal Securities Act of 1933, 15 U.S.C. §§ 77a–77aa (1982), violations of the Minnesota Blue Sky Law, Minn.Stat. ch. 80A (1984), and common law claims of fraud, negligence, and breach of fiduciary duty. Eckberg and Paine Webber both filed answers that included a general denial of Fairview's claims and raised certain affirmative defenses.

---

1. The Court of Appeals certified this case to us pursuant to Minn.Stat. § 480A.10, subd. 2 (1984), and Minn.R.Civ.App.P. 118, as a case meriting accelerated review.

The parties engaged in discovery for a period of approximately 1 year after the initial pleadings were filed. The discovery consisted of interrogatory requests and answers, document production, and several depositions. On November 21, 1984, however, Paine Webber filed a motion to compel arbitration[2] and stay the district court proceedings based on the recently issued United States Supreme Court decision of *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1. Paine Webber claimed it had initially proceeded with litigation in this case because of our decision in *Kiehne v. Purdy*, 309 N.W.2d 60, which nullified arbitration agreements and required a trial where a violation of the Minnesota Blue Sky Laws was alleged. Paine Webber, however, argued that *Southland* preempts *Kiehne* in cases where the FAA[3] is involved. Paine Webber also asserted that its motion to compel arbitration was timely because prior to the Supreme Court's decision in *Southland*, no right to arbitration existed in this case. *See Kiehne*, 309 N.W.2d at 61.

The trial court denied Paine Webber's motion. It held *Kiehne* was not preempted by *Southland* because "*Southland* ruled on federal law and has no applicability to state law. The legal argument of *Southland* is inapplicable to the present case. *Kiehne v. Purdy* follows *Wilko v. Swan* [346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)], which is still good law."

Several issues are raised on appeal:

1. Does *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, overrule this court's decision in *Kiehne v. Purdy*, 309 N.W.2d 60, as to arbitration agreements under the FAA?

2. Has Paine Webber waived its right to proceed by arbitration in this case?

3. Is the contract in this case void, thereby destroying Paine Webber's right to proceed by arbitration?

4. If arbitration is allowable, should the arbitrable and nonarbitrable claims proceed independent of one another?

1. The initial question in this case concerns the legal effect of *Southland Corp. v. Keating* on this court's decision in *Kiehne v. Purdy*. In *Kiehne*, we held Minn.Stat. § 80A.23, subd. 10, precluded arbitration of violations of the Minnesota Blue Sky Law and any factually intertwined common law claims. *Kiehne* required such actions to be brought in state courts under section 80A.23, subd. 10. In *Southland*, however, the United States Supreme Court held the FAA preempted a provision in the California State Franchising Law similar to subdivision 10, which also required that violations be litigated in court rather than being resolved through arbitration. The question in this case, then, is one of preemption—whether *Southland* and the FAA preempt *Kiehne* and section 80A.23, subd. 10, for arbitration agreements falling within the FAA.

The FAA governs the right of a party to seek arbitration where a contract involves interstate commerce. Section 2 of the FAA provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration, an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

**2.** Several of the documents that are part of the alleged contract in this case include arbitration clauses. These clauses state, "Any controversy between us arising out of or relating to this contract or the breach thereof, shall be settled by arbitration * * *."

**3.** 9 U.S.C. §§ 1–14 (1982). In order for an arbitration agreement to fall within the purview of the FAA, the underlying contract must involve interstate commerce. *Id.* § 2. Because this case involves the buying and selling of securities, it clearly involves interstate commerce. The FAA therefore applies to any arbitration agreement that may exist in this case.

9 U.S.C. § 2. "Commerce" is defined under the FAA as including "commerce among the several States * * *." *Id.* § 1; *see Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 401–02 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967) (term "involving commerce" has broad enough meaning to encompass entire interstate commerce power of Congress). The FAA allows a party to move for a stay of any court proceedings and to compel arbitration under an arbitration agreement. 9 U.S.C. §§ 3–4. It also provides a procedure for appointing arbitrators, subpoenaing witnesses and taking testimony, and challenging an arbitration panel's award. *See id.*, §§ 5–12.

The Minnesota Blue Sky Law, on the other hand, governs the offer, sale, or purchase of any security within this state. Minn.Stat. § 80A.01. Securities regulation is viewed expansively in Minnesota in order to protect investors. *State v. Coin Wholesalers, Inc.*, 311 Minn. 346, 355, 250 N.W.2d 583, 588 (1976). In enacting chapter 80A, the legislature provided certain private remedies for persons damaged by the illegal offer, sale, or purchase of securities. *See* Minn.Stat. § 80A.23. The legislature also provided statutory protection of a litigant's private remedies:

> Any condition, stipulation or provision binding any person to waive compliance with any provision of sections 80A.01 to 80A.31 or any rule or order hereunder in the purchase or sale of any security is void.

*Id.*, subd. 10.

In *Kiehne v. Purdy*, 309 N.W.2d 60, we considered whether section 80A.23, subd. 10, rendered an arbitration agreement invalid for violations of the Minnesota Blue Sky Law and other related common law claims. The respondent in *Kiehne* sued her former broker and his firm for damages arising out of the alleged mishandling of her securities account. She asserted claims of common law fraud, breach of contract, and violations of the Minnesota Blue Sky Law. Appellants moved to compel arbitration of these claims, but the trial court, holding that subdivision 10 of section 80A.23 precluded arbitration, denied the motion.

On appeal, we considered the issue of "whether an agreement to arbitrate is '[a]ny condition, stipulation or provision binding any person to waive compliance with any provision' of Minnesota Blue Sky Laws" and therefore void under subdivision 10. We agreed with the trial court and held that subdivision 10 precluded arbitration of the respondent's claims:

> Section 80A.23, subdivisions 1 and 2, establish the right of a seller or buyer of securities to redress violations of certain provisions of the Minnesota Blue Sky Law by bringing a civil action in law or equity. Thus, the right to judicial trial and review is a "provision" within chapter 80A. Clearly, an agreement to arbitrate is a "stipulation" which would require waiver of judicial trial and review. Therefore, under section 80A.23, subdivision 10, an agreement to arbitrate is void as to disputes arising under chapter 80A.

309 N.W.2d at 61.[4]

*Kiehne* was based on two differing rationale. First, we relied upon the legislative intent of the Minnesota Blue Sky Law that it be construed to make uniform the law of this state and all other states in which the law has been enacted. *See* Minn.Stat. § 80A.31. Second, we considered persuasive the United States Supreme Court's decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In *Wilko*, the Supreme Court held that claims arising under the Securities Act of 1933 were not subject to arbitration under the FAA where

---

**4.** We held that the trial court properly denied all of respondent's claims, both those involving chapter 80A and those under the common law. 309 N.W.2d at 61, n. 2. In doing so, we adopted the doctrine of "intertwining," where arbitrable and nonarbitrable claims arising under the same facts are not subject to arbitration. *See*

*Dean Witter Reynolds, Inc. v. Byrd*, —— U.S. ——, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985). The effect of this decision is that, in Minnesota, common law claims arising out of the same facts as a securities law violation cannot be separated, but rather must be considered together.

the 1933 Act contained a provision similar to subdivision 10. *See* 15 U.S.C. § 77n. We adopted the same reasoning for state securities law violations arising at the state level.

In *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, the Supreme Court considered whether a California Franchise Investment Law Act provision similar to subdivision 10[5] was preempted by the FAA. Keating brought an action in California State Court, alleging franchise law violations and common law claims of fraud, misrepresentation, breach of contract, and breach of fiduciary duty. Southland asserted its right to arbitration under the parties' contract which provided: "Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration * * *." *Id.* at 4, 104 S.Ct. at 855. The trial court, and later the California Supreme Court, held section 31512 precluded arbitration of the franchising law violations. On appeal, the United States Supreme Court overturned this decision, holding that the FAA preempted section 31512.

The Court cited to the national policy declared by Congress in the FAA that favors arbitration and stated, "Congress * * withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 10, 104 S.Ct. at 858. The FAA was grounded in Congress' authority to regulate interstate commerce, and this authority applied "in state as well as federal courts." *Id.* at 12, 104 S.Ct. at 859. The purpose behind the FAA was "to make valid and enforceable agreements for arbitration contained *in contracts involving interstate commerce.*" *Id.* at 12–13, 104 S.Ct. at 859 (emphasis in original). Because Congress has evidenced a preference for arbitration, this preference should override state interests in re-

quiring litigation, such as those in section 31512, when the FAA applies.

■ *Southland* is in direct conflict with this court's decision in *Kiehne; Kiehne* must therefore be overruled with respect to arbitration agreements falling within the purview of the FAA. The similarities between these cases are too close to ignore. Both cases involve statutes which are essentially identical and prohibit certain statutory violations from being arbitrated. A comparison of section 80A.23, subd. 10, and section 31512 reveals almost identical language. The only difference is that they apply to different areas of substantive law. Both cases also involve arbitration agreements falling within the FAA. Furthermore, we did not consider the preemption issue in *Kiehne*. Because preemption was never at issue, *Kiehne* does not stand for requiring litigation of securities law violations that would be in conflict with the FAA. Even if it did, *Southland* would have effectively destroyed this ruling. Finally, the broad analysis used in *Southland* can be applied outside of the Supreme Court's ruling on the California statute. The same general principles applied to this case or to *Kiehne* weigh in favor of finding preemption. For these reasons, *Southland* overrules *Kiehne* to the extent that arbitration is under the FAA. *Kiehne* still stands as good law, however, for cases brought under the Minnesota Arbitration Act.

Fairview, however, attempts to distinguish *Southland* from the present case. Its argument is premised on an apparent distinction between securities law claims and franchising law claims under the FAA. Its argument is as follows: In *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182 the Supreme Court voided an arbitration agreement requiring arbitration of violations under the Federal Securities Act of 1933. The Court held that the 1933 Act's noncompliance provision, similar to subdivision 10, requires litigation of all claims arising under the Act. *See* 15 U.S.C. § 77n.[6] The

---

**5.** The California law provides: "Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule

or order hereunder is void." Cal.Corp.Code § 31512 (West 1977).

**6.** The Court interpreted 15 U.S.C. § 77n, prohibiting the use of any "condition, stipulation or

same result was reached by this court in *Kiehne* when it relied on *Wilko* in interpreting subdivision 10. *Southland,* on the other hand, involved a noncompliance provision under state franchising law for which no equivalent federal provision exists prohibiting arbitration of franchise law violations. *Southland* therefore involved only the question of preemption under a state noncompliance provision. The present case, however, involves the validity of a state noncompliance provision for which a corresponding federal noncompliance provision exists. *Southland* is distinguishable because it did not involve the relationship between corresponding noncompliance provisions under both state and federal law. Fairview then asserts that *Wilko* should therefore control in this case to prohibit arbitration.

Fairview's distinction, however, is without merit. It fails to consider the breadth of the Supreme Court's decision in *Southland.* The Court did not limit its analysis simply to the facts at hand. Rather, it enunciated broad principles concerning preemption under the FAA. We cannot ignore these principles in this case. When they are applied, Fairview's distinction between *Southland* and the present case becomes unimportant. In addition, Fairview's use of *Wilko* in this case is misplaced. *Wilko* involved the relationship between two competing *federal* statutes. It was the duty of the Court to determine which would pre-

vail. In the present case, however, the relationship is between competing statutes at the state and federal level. This is essentially the same case as was presented in *Southland.* In such a case, the duty of the court is to determine whether the federal statute preempts state law. Because *Wilko* did not involve preemption, it cannot control in this case. *Kiehne* is therefore overruled by *Southland* with respect to claims under the FAA.[7]

2. Fairview asserts, however, that even if *Southland* controls in this case, Paine Webber has waived its right to arbitration by proceeding with litigation in this case. By proceeding with litigation, Paine Webber has allegedly failed to timely raise the issue of arbitration. In support of its claim, Fairview cites several cases for the general proposition that a party will be deemed to have waived its right to arbitration where it has become involved in litigation without first raising its right to arbitration. *See, e.g., Trade Arbed, Inc. v. S/S Ellispontos,* 482 F.Supp. 991, 998 (S.D.Tex. 1980); *Gabor v. Spicyn,* 99 A.D.2d 1000, 473 N.Y.S.2d 457 (1984); *Soprano v. American Hardware Mutual Insurance Co.,* 491 A.2d 1008, 1011 (R.I.1985).

We have adopted the same general rule in Minnesota concerning waiver of an arbitration agreement when a party proceeds with litigation. *See Brothers Jurewicz,*

provision" binding a person acquiring a security to waive compliance with any provision of the Act, as nullifying agreements to arbitrate under the FAA. *Wilko,* 346 U.S. 427, 74 S.Ct. 182. The Court noted the conflicting policies behind both the 1933 Act and the FAA, but chose to allow section 14 to override the FAA because it considered that "the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for arbitration of issues arising under the Act." *Id.* at 438, 74 S.Ct. at 188. Claims under the 1933 Act are therefore not subject to arbitration even if a valid arbitration agreement exists.

7. The claim that *Wilko* should control in state cases to prohibit arbitration was also rejected by the *Southland* Court in response to a similar argument raised by the California Supreme Court:

The California Supreme Court justified its holding by reference to our conclusion in

*Wilko v. Swan* that arbitration agreements are nonbinding as to claims arising under the Federal Securities Act of 1933. *This analogy is unpersuasive.* The question in *Wilko* was not whether a state legislature could create an exception to § 2 of the Arbitration Act, but rather whether Congress, in subsequently enacting the Securities Act, had in fact created such an exception.

465 U.S. at 16 n. 11, 104 S.Ct. at 861 n. 11 (citations omitted, emphasis added). Similarly, the United States Court of Appeals for the Eighth Circuit has also rejected Fairview's argument that *Kiehne* is not overruled by *Southland. See Fogarty v. Piper,* 767 F.2d 513 (8th Cir.1985), *on appeal from remand,* 781 F.2d 662 (8th Cir. 1986) (Eighth Circuit agrees that *Kiehne* is overruled by *Southland* with respect to arbitration agreements under the FAA).

*Inc. v. Atari, Inc.,* 296 N.W.2d 422 (Minn. 1980); *Har-Mar, Inc. v. Thorsen & Thorshov, Inc.,* 300 Minn. 149, 218 N.W.2d 751 (1974). What Fairview has failed to consider in this case, however, is the effect *Kiehne* had on Paine Webber's duty to seek arbitration prior to *Southland.*

Several courts have ruled that where it would have been futile for a party to move for arbitration because of the legal rules underlying the action, no waiver of that right takes place until the circumstances of the case change. *See, e.g., Kershaw v. Dean Witter Reynolds, Inc.,* 734 F.2d 1327, 1329 (9th Cir.1984); *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1027 (11th Cir.1982). In *Belke,* a case similar to the present one, Belke brought suit against Merrill Lynch, raising claims under the federal securities laws and related common law claims. Merrill Lynch answered Belke's complaint and proceeded with discovery. Some time later, Belke's securities law claims were dismissed. Merrill Lynch then moved to compel arbitration of the common law claims. The Eleventh Circuit held Merrill Lynch had not waived its right to arbitrate the remaining issues by proceeding with litigation. 693 F.2d at 1026–27. At the beginning of Belke's action, the doctrine of intertwining precluded arbitration of the common law claims separate of the securities law claims. The court therefore reasoned it would have been futile for Merrill Lynch to move for arbitration because such action would have been denied. It held Merrill Lynch had not waived its right to arbitrate the common law claims by failing to move for arbitration while the federal securities law claims remained part of the suit. By moving to compel arbitration soon after the securities law issues were dismissed, Merrill Lynch had made a timely motion for arbitration.

■ In the present case, Paine Webber had no right to compel arbitration until the Supreme Court issued its decision in *Southland.* Prior to this time, *Kiehne* was controlling and precluded arbitration. Paine Webber, however, did not bring its motion to compel arbitration until almost 10 months after *Southland* was issued. A question of waiver still exists, therefore, concerning this period. Because we believe the question of waiver in this particular case to be one for the trial court to consider, *see Brothers Jurewicz,* 296 N.W.2d at 427–28, we remand this issue with instructions that a decision as to waiver be made in conformity with the cases and principles set forth above.

3. Fairview also asserts the contract allegedly underlying Paine Webber's right to seek arbitration is void and therefore arbitration is unavailable in this case. Fairview bases its voidness claim on several grounds. First, Fairview argues the contractual agreements in this case are void because they were not signed or approved by the proper association representative. It asserts that Lyle Eckberg, the association representative who signed most of the agreements in this case, had no authority to enter into a margin account on behalf of Fairview. Second, Fairview contends the contract in this case is one of adhesion and is therefore void.

■ The question of the validity of the contract in this case was never decided by the district court. Fairview argues the issue should be submitted to the district court for its determination of the contract's validity. Paine Webber, on the other hand, maintains that this question is properly one for an arbitration panel to decide. We agree with Fairview and remand this issue to the district court for a decision in conformity with the principles set forth below.

Section 2 of the FAA upholds arbitration agreements as valid, irrevocable, and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court considers the last phrase of section 2 to be a valid limitation on the enforceability of arbitration agreements. *See Southland,* 465 U.S. at 10, 104 S.Ct. at 858. Arbitration clauses may therefore be revoked upon "such grounds as exist at law or in equity for the revocation of any contract." *Id.*

Although section 2 allows legal and equitable claims to defeat an arbitration agreement, it fails to indicate what tribunal should properly make this determination—the arbitrators or the district court. This question has been resolved, however, by the Supreme Court in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801. In *Prima Paint,* the Court held a district court may only consider the propriety of a stay of judicial proceedings under the FAA where the issues raised involve the making of the actual agreement to arbitrate and not the contract as a whole. *See id.* at 404, 87 S.Ct. at 1806. The Court based its holding on section 4 of the FAA, which provides in part:

> The [district] court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. Because section 4 speaks only of agreements for arbitration, a court "may consider only issues relating to the making and performance of the agreement to arbitrate." 388 U.S. at 404, 87 S.Ct. at 1806. If the issue goes to the making of the contract generally, a court has no right under the FAA to consider the issue. *Id.* This rule has been consistently applied by the federal courts. *See Southland,* 465 U.S. at 12, 104 S.Ct. at 859, *Unionmutual Stock Life Insurance Co. of America v. Beneficial Life Insurance Co.,* 774 F.2d 524, 528 (1st Cir.1985); *Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 862 (2d Cir.1985); *Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163, 1165 (8th Cir.1984).

The question, then, in the present case is whether the claims raised by Fairview relate to "the making of the agreement to arbitrate" so that they should be considered by the district court. We believe that they do. In so holding, we rely on the decision of *Interocean Shipping Co. v. National Shipping & Trading Corp.,* 462 F.2d 673 (2d Cir.1972). In *Interocean Shipping,* the court considered whether claims denying the very existence of a contract go to the making of an arbitration agreement so that they can be considered by the district court under section 4 of the FAA. The court stated:

> There can be no doubt that the question of the very existence of the [contract] which embodies the arbitration agreement is encompassed within the meaning of "the making of the arbitration agreement." * * * "[I]f it was claimed that * * * there had at no time existed as between the parties any contractual relation whatever, * * * a trial of this issue would be required before an order could be issued directing the parties to proceed to arbitration."

*Id.* at 676 (quoting *In re Kinoshita & Co.,* 287 F.2d 951, 953 (2d Cir.1961). In the present case, Fairview's claims concerning the existence of an adhesion contract and the unauthorized making of a margin account agreement by Lyle Eckberg go directly to the very existence of the alleged Fairview/Paine Webber agreement. These claims should therefore be considered by the trial court on remand.

■ 4. Under our decision today, Minnesota Blue Sky Law claims and intertwined common law claims are subject to arbitration under the FAA. Claims under the 1933 Securities Act, however, cannot be arbitrated under the rule stated in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182. In addition, because the Supreme Court has rejected the doctrine of intertwining at the federal level, *see Dean Witter Reynolds, Inc. v. Byrd,* 105 S.Ct. at 1241, the common law claims raised by Fairview would not be required to be litigated under *Wilko.* Our decision today could therefore essentially split this case into two separate proceedings—arbitration of the Minnesota Blue Sky Law and common law claims, and liti-

gation of the 1933 Securities Act claims. Fairview has raised the issue of how its 1933 Act claims are to proceed if the trial court allows the Minnesota Blue Sky Law and common law claims to be arbitrated. Because this issue is important and the answer is somewhat unclear, we will resolve it here.[8]

In *Byrd*, the Supreme Court considered the conflicts that can arise from allowing some claims to be arbitrated and requiring others to be litigated. Specifically, the Court considered the possible preclusive effect a decision on the arbitrable claims would have on those being litigated. Although the Court recognized that a conflict existed, it refused to allow this conflict to override the preference for arbitrating disputes found in the FAA. In fact, the Court questioned whether an unappealed arbitration decision would have any preclusive effect on litigated claims also involved in the same dispute. *See* 105 S.Ct. at 1243–44. The Court refused, however, to rule on whether any preclusive effect existed in *Byrd*. It also refused to give any specific guidance to lower courts on how to proceed with the arbitrable and nonarbitrable claims in such cases. It simply stated that "there is no reason to require that district courts decline to compel arbitration, or manipulate the ordering of the resulting bifurcated proceedings, simply to avoid an infringement of federal interests." *Id.* at 1244.

Justice White's concurring opinion in *Byrd*, however, gave lower courts a much more solid answer to the question of how arbitrable and nonarbitrable claims are to proceed once arbitration has been ordered. He stated that:

once it is decided that [arbitrable and nonarbitrable] proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed. While the impossibility of the lawyers being in two places at once may require some accommodation in scheduling, * * * the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course.

*Id.* at 1245 (White, J., concurring).

Since *Byrd*, it has been clear that there can be no delay in the arbitration of claims under the FAA in order to litigate claims under the Securities Act of 1933. *See Shihadeh v. Dean Witter Reynolds, Inc.*, 766 F.2d 461, 463 (11th Cir.1985); *Gorman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 609 F.Supp. 1054, 1055 (S.D. Fla.1985). What is less clear, however, is whether the claims being arbitrated and those being litigated should proceed independently of each other. *See Shihadeh*, 766 F.2d at 463 (court refused to express an opinion on this issue, leaving it for the district court to decide). We agree, however, with the statements of Justice White in *Byrd*. There is no reason why arbitration and litigation cannot take place at the same time in this case, if the district court finds that arbitration is proper. We do not, however, express any opinion on the possible preclusive effect that could result from this procedure, leaving that issue for future consideration.[9]

In conclusion, we reverse the decision of the district court in this case and hold that the Supreme Court's decision in *Southland* preempts our decision in *Kiehne* to the extent an arbitration agreement falls with-

---

**8.** This issue is somewhat premature, since the district court must first determine whether a contract exists in this case and whether Paine Webber waived its right to arbitration. We believe, however, that it is an issue which merits some discussion at this juncture.

**9.** Fairview has also questioned Paine Webber's choice of forum in this case for arbitration. Paine Webber chose an arbitration forum after

it offered the choice to Fairview and it refused. Fairview now contests this choice of forum. This issue, however, was not considered by the district court when it denied Paine Webber's motion to compel arbitration. We believe it must first be considered by the district court. We therefore remand it to the district court for its consideration.

in the FAA. Minnesota Blue Sky Law and related common law claims are therefore subject to arbitration. Claims under the 1933 Securities Act, however, must be litigated. On remand, the district court is to consider whether Paine Webber has waived its right to arbitration in this case and whether a contract exists under which arbitration is available. If the court answers both of these questions in Paine Webber's favor, it must compel arbitration of the Minnesota Blue Sky Law and related common law claims. Resolution of the federal securities law claims, however, need not be delayed.

Reversed and remanded.